George C. BROWN, Appellant,

v.

Lucy TRAYLOR, Darryl Keith Walker, Paul Wayne Walker, Anthony C. Walker, Terry L. Walker, and James E. Walker, Appellees.

No. 01–04–01091–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 27, 2006.

Supplemental Opinion on Denial of Rehearing Nov. 2, 2006.

Freddie N. Jackson, Law Office of Freddie N. Jackson, Frank J. Ross, Houston, for appellees.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

TIM TAFT, Justice.

Appellant, George C. Brown ("George"), appeals from a judgment, rendered upon a jury verdict, probating what the jury concluded was a true and correct copy of the will of his father, Henry Brown ("Henry"), deceased. We determine whether (1) legally sufficient evidence supported the jury's award of attorney's fees to appellee Lucy Traylor ("Traylor"), who was appointed administrator of Henry's estate; (2) the trial court erred in refusing a jury instruction stating that a testator must publish the will to the subscribing witnesses; (3) George waived all but one of his legal-sufficiency challenges; (4) the evidence was factually sufficient to support various express and implicit jury findings; and (5) we have jurisdiction over George's appellate complaints concerning a post-judgment order appointing a substitute administrator when no appeal was perfected from that order. We affirm the judgment in part, reverse it in part with respect to the award of attorney's fees, and remand the cause for a determination of matters relating to attorney's fees.

### Background

George was Henry's son. Traylor was a long-time friend of Henry and his wife. Henry died on April 15, 2001 at the age of 81. On June 20, 2001, George filed an application to determine heirship, alleging that Henry had died intestate. In response, on October 11, 2001, Traylor filed an opposition to George's application, and she simultaneously moved the trial court

E. John Gorman, Houston, for appellant.

to order George to file Henry's original will, which she alleged that Henry had executed on March 13, 1999. When the original will could not be located, Traylor filed, on February 5, 2002, a verified application to probate a copy of the March 13, 1999 will ("the will copy"). On April 19, 2002, George filed an opposition to Traylor's probate application and counter-sued Traylor and her daughter, Pamela Ann Yancy ("Yancy")—the notary public who had drafted the March 13, 1999 will—for civil conspiracy to commit forgery and fraud, based on their filing what he claimed was a forged copy of the will, seeking actual and exemplary damages.

The jury found that (1) Henry had testamentary capacity on March 13, 1999; (2) Henry signed the March 13, 1999 will; (3) Melva Collins ("Collins"),[1] Wanda Walker ("Wanda"),[2] Darryl Keith Walker ("Darryl"),[3] and Yancy each "subscribed his or her name in his or her own handwriting to the [March 13, 1999 will] while in the presence of Henry Brown at a time when he or she was above the age of 14 years"; (4) the will copy was not forged;[4] (5) Henry did not revoke the March 13, 1999 will; (6) the will copy was a true and correct copy of Henry's March 13, 1999 will;[5] (7) Traylor acted in good faith and with just cause in defending the March 13, 1999 will;[6] and (8) Traylor's reasonable and necessary attorney's fees incurred in trying to probate the will were $20,000. Based on the jury's findings, the trial court admitted the will copy to probate, rendered a take-nothing judgment on George's claims against Traylor and Yan-

cy, appointed Traylor to be dependent administratrix with will annexed of Henry's estate, and awarded Traylor $20,000 in attorney's fees. George moved for new trial, which was denied by operation of law.

### Traylor's Attorney's Fees

In answering jury question seven, the jury expressly found that Traylor acted in good faith and with just cause in defending the March 13, 1999 will for the purpose of having it admitted to probate. In answering jury question eight, the jury found that that $20,000 would fairly and reasonably compensate her for the necessary legal services rendered in trying to probate the will. The instruction accompanying jury question eight provided that

> in ascertaining the reasonable value of services of an attorney, you may take into consideration the time and labor required; the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; and the experience, reputation and ability of the lawyer or lawyers performing the services.

*See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9) (establishing similar, but also additional, criteria to be considered in determination of reasonableness of attorney's fees).

---

1. Collins was a friend of Yancy's.

2. Wanda was Henry's niece. The remaining appellees—Darryl Keith Walker, Paul Wayne Walker, Anthony C. Walker, Terry L. Walker, and James E. Walker—are the heirs of Wanda, who predeceased Henry.

3. Darryl was Wanda's son.

4. Five of the six jurors made this finding.

5. Five of the six jurors made this finding.

6. Five of the six jurors made this finding.

In issue seven, George argues that the trial court abused its discretion in overruling his objection to the admission of Traylor exhibits 10 and 14—fee statements that she offered as evidence of her attorney's fees—because those exhibits were offered through Traylor, who was not an expert. George argues that this error was harmful because "there was no other evidence to support the jury's answer" to the jury question concerning the amount of attorney's fees. Under a liberal construction of his issue seven,[7] George alternatively argues that (1) even if these two exhibits were properly admitted, they were legally insufficient to support the award of attorney's fees because they could not substitute for the expert testimony required to prove up the amount of attorney's fees and (2) Traylor produced no expert testimony proving up the amount of her fees. We understand George's legal-sufficiency challenge to attack only the jury's finding on question eight, not question seven.

### 1. The Law

■ When any person designated as executor in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX. PROB.CODE ANN. § 243 (Vernon 2003). "Expert testimony is required to support an award of attorney's fees." *Woollett v. Matyastik*, 23 S.W.3d 48, 52 (Tex.App.-Austin 2000, pet. denied) (so holding in context of attorney's fees awarded to

guardian in guardianship proceeding); *Barrett v. Parchman*, 675 S.W.2d 289, 291–92 (Tex.App.-Dallas 1984, no writ) (sustaining no-evidence challenge to attorney's fees awarded to temporary administratrix of estate when no expert testimony supported fee award and when only evidence of reasonableness and necessity of fees was administratrix's testimony).

### 2. Standards of Review

Addressing George's primary argument under issue seven, we review the admission of evidence for abuse of discretion. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex.2005).

George's alternative argument under issue seven requires us to conduct a legal-sufficiency review, in which "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003). However, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . . [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

■ The jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *Id.* at 819. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance

---

**7.** *See* TEX.R.APP. P. 38.1(e), 38.9; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberal-

ly points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants.").

with their verdict if reasonable human beings could do so. *Id.*

■ When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). Such a no-evidence challenge will be sustained when " '(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.' " *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

### 3. Admission of the Fee Statements

■ George objected to only exhibit 10, not to exhibit 14. He thus waived his challenge to the admission of exhibit 14.[8] *See* Tex.R.App. P. 33.1(a)(1). His failure to object to exhibit 14, however, does not render harmless the admission of exhibit 10 (assuming that it was error to admit exhibit 10). Exhibit 14 was a supplement to the billing statement (exhibit 10) previously admitted into evidence; it was not merely the same evidence offered a second time, and exhibit 14 documented only $7,087.50 in fees. Therefore, the admission of Exhibit 14 did not render harmless the fee information contained in exhibit 10, assuming without deciding that exhibit 10 was improperly admitted. *See* Tex.R.App. P. 44.1(a).

### 4. Sufficiency of the Evidence

■ We need not consider whether exhibit 10 was improperly admitted for lack of expert predicate because, even if it was not, there would still be no evidence of the necessity for, or the reasonableness of, Traylor's attorney's fees. Traylor testified as follows:

> Traylor's counsel: Now, when you came to my office, you asked me to help you in this matter; is that correct?
>
> Traylor: Right.
>
> Traylor's counsel: And did you need a lawyer to represent you at that time?
>
> Traylor: Yes.
>
> Traylor's counsel: And I agreed to represent you; is that correct?
>
> Traylor: Right.
>
> Traylor's counsel: And you agreed to hire me as your attorney?
>
> Traylor: Right.
>
> Traylor's counsel: And you agreed to pay me $175 an hour?
>
> Traylor: I sure did.
>
> . . .

---

**8.** George argues that "[t]he trial court and the parties were aware that Traylor intended to supplement Traylor Exhibit 10 with Traylor Exhibit 14, and that George Brown had the same objections to both exhibits" and thus that "further objection was unnecessary to preserve error as to Traylor Exhibit 14." However, an objection must generally be lodged each time that similar evidence is offered, especially when, as here, the opponent did not obtain a running objection and the second exhibit was offered the following day. *See Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984) ("The general rule is that error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection."); *McShane v. Bay Area Healthcare Group, Ltd.,* 174 S.W.3d 908, 916 (Tex.App.-Corpus Christi 2005, pet. filed) ("If a party objects to certain evidence, but later does not object when the same evidence is introduced, the party waives its objection. A party can preserve error to repeated offers of the same evidence by asking the court for a running objection.") (citations omitted).

Traylor's counsel: Now, my fees charged to you were reasonable and necessary? My fees—

George's counsel: Objection, calls for expert testimony. She's not qualified as an expert to testify to that.[9]

Traylor's counsel: I think she can say whether they're reasonable or necessary.

Court: I think it would go to the weight of her testimony. So, she can answer, if you like.

Traylor's counsel: You didn't ask—did you have anyone else to file a lawsuit and file a motion for probate to protect your interests?

Traylor: No.

Traylor's counsel: Could you have done it yourself? Could you have done it yourself?

Traylor: No.

Traylor's counsel: So, my working for you was necessary, was it not? You needed me to work for you?

Traylor: Right.

Traylor's counsel soon thereafter offered exhibit 10:

Traylor's counsel: At this time, Judge, I would offer Traylor No. 10, which is my fee statement. And I will also advise the Court that that's not a complete fee statement. It does not include trial dates, and the trial and does not include work that was done in the latter part of August, 2004.

George's counsel: Well, this document is hearsay. We, also, object under Rule 701 and 702 because it calls for expert

opinion testimony. There's been no expert to get up on the witness stand to testify that their attorney's fees are reasonable and necessary. And this is all hearsay.

Traylor's counsel: Judge, you can take judicial notice of the Court's file and judicial notice of attorney's fees. If necessary, I can testify.

Court: I think he can testify. So, I will let it in.

The next day, the trial court admitted Traylor exhibit 14, after this discussion:

Court: On your additional attorney's fees, I believe you did testify during the trial about your hourly rate and said you didn't know the number of hours yet. And I understand you want to supplement to show the number of hours you have?

Traylor's counsel: That's correct. That's Traylor Exhibit No. 14.

Court: It shall be admitted.

The exhibits themselves merely set out what work was done and what was charged; they contain no information concerning the reasonableness and necessity of the fees incurred or charged.

■ We hold that, even if Exhibit 10 was properly admitted and thus may be considered in our sufficiency review, and even though no objection was made to exhibit 14, Traylor presented no evidence of reasonableness or necessity to support the jury's award of $20,000 in attorney's fees to Traylor. We measure the sufficiency of the evidence against the charge given because no one objected to it,[10] and

---

**9.** Although George objected to Traylor's testimony at trial on this ground, he does not assert on appeal a challenge to the overruling of that objection. Therefore, we (1) may not consider whether the trial court erred in allowing Traylor to testify to these matters and (2) will consider her testimony in our legal-sufficiency review. *See Walling v. Metcalfe,*

863 S.W.2d 56, 58 (Tex.1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error.").

**10.** *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 530 (Tex.2002) (discussing *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000)).

that charge required proof of reasonableness and necessity by evidence such as the time and labor required; the novelty and difficulty of the questions involved; the skill required to perform the legal services properly; the fee customarily charged in the locality for similar legal services; the amount involved; the results obtained; and the experience, reputation, and ability of the lawyer or lawyers performing services for Traylor. So did the law. *See Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990) ("In awarding attorney's fees the trial court, as the trier of fact, must take into account various factors such as: the nature and complexity of the case; the nature of the services provided by counsel; the time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required."); *see also Hamil v. Caver,* No. B14–90–00125–CV, 1991 WL 24560, at *5–6 (Tex.App.-Houston [14th Dist.] Feb. 28, 1991, writ denied) (not designated for publication) (holding that attorneys' testimony of reasonableness and necessity—in light of hours billed, hourly rate, reasonable rates in area, complexity of case, and like

factors—supported award of attorney's fees under Probate Code section 243). The law also required that reasonableness and necessity be proved by expert testimony. *See Woollett,* 23 S.W.3d at 52; *Barrett,* 675 S.W.2d at 291. The fee statements did not speak to these matters,[11] Traylor was not an expert on attorney's fees,[12] and no expert testified to the reasonableness and necessity of the attorney's fees that Traylor incurred. *See Barrett,* 675 S.W.2d at 291–92.

Traylor first responds by arguing that "[t]he requirement of necessity of the attorney's fees award *was presumed* under [section] 243 once the jury found that Traylor was acting in good faith and with just cause."[13] (Emphasis added.) The cases that Traylor cites in support do not hold or intimate that such a presumption arises, however. *See Russell v. Moeling,* 526 S.W.2d 533, 535–36 (Tex.1975); *Huff v. Huff,* 132 Tex. 540, 124 S.W.2d 327, 329 (1939). In fact, neither these cases nor the statute's plain language supports Traylor's position. The Legislature provided that the executor or administrator "shall be allowed ... his *necessary* expenses and disbursements, including *reasonable* attorney's fees"[14]—that is, the Legislature pro-

---

**11.** Traylor relies on *Zapalac v. Cain,* in which this Court affirmed the trial court's denial of a motion to disregard the jury's award of $40,000 to the executrix in a will contest. *See id.,* 39 S.W.3d 414 (Tex.App.-Houston [1st Dist.] 2001, no pet.). In *Zapalac,* the only evidence of attorney's fees that was mentioned in the opinion was the executrix's attorney's fee statement "and her own testimony." *See id.* at 418. However, the appellant in *Zapalac* did not challenge the fees award on the ground that it was not supported by expert testimony. *See id. passim.* Absent fundamental error, an appellate court cannot reverse a trial court's judgment on a ground that is not challenged on appeal. *See, e.g., Walling,* 863 S.W.2d at 58. Here, in contrast, George preserved and raised on appeal his challenge that the evidence supporting the

amount of attorney's fees was legally insufficient for lack of expert testimony.

**12.** Moreover, even if we consider Traylor's non-expert testimony about fees, her testimony does not address reasonableness at all. And although she testified that it was necessary for her *generally to incur* attorney's fees because she needed a lawyer to probate the will, that is not the same as testimony that the fees *actually incurred* in that endeavor were necessary—the latter being what she had to prove under the charge and the law.

**13.** The remaining appellees have adopted all of Traylor's arguments concerning George's issue seven.

**14.** Tex. Prob.Code Ann. § 243 (Vernon 2003) (emphasis added).

vided that the only attorney's fees that must be awarded are those that are both necessary and reasonable, implying that the necessity and reasonableness of those fees must still be shown.

■ Traylor next responds that "the [trial] court can take judicial notice of the reasonableness of the [attorney's] fees" in this case because Texas Civil Practice and Remedies Code sections 38.003 and 38.004 apply by analogy and allow both a presumption of reasonableness and the court's judicial notice of customary attorney's fees. Civil Practice and Remedies Code section 38.003 expressly provides for a presumption, but no such express statutory presumption exists in Probate Code section 243. *Compare* Tex. Civ. Prac. & Rem.Code Ann. § 38.003 (Vernon 1997) ("It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable. The presumption may be rebutted.") *with* Tex. Prob.Code Ann. § 243 (not expressly providing for any such presumption). Additionally, Civil Practice and Remedies Code section 38.004 allows a court to take judicial notice of usual and customary attorney's fees, but only in a bench trial or in a jury trial in which the parties have agreed to submit the question of the amount of attorney's fees to the court. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.004 (Vernon 1997). By its own terms, then, section 38.004—even assuming without deciding that that section could apply by analogy—would not apply here, where

the issue of the amount of attorney's fees was submitted to the jury.

■ We thus hold that the evidence was legally insufficient to support the jury's award of $20,000 in attorney's fees to Traylor. However, George preserved this legal-sufficiency challenge in his motions for new trial, rather than in a motion for instructed verdict, a motion for judgment notwithstanding the verdict, an objection to the submission of a jury issue, or a motion to disregard the jury's answer on a vital fact issue. Accordingly, George is entitled only to a remand, rather than to a rendition. *See Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex.1993).

We sustain the portion of issue seven concerning legal sufficiency of the evidence of the jury's award of attorney's fees under question eight. We thus need not reach that portion of issue seven concerning the propriety of admitting exhibit 10.

■ "If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error." Tex.R.App. P. 44.1(b). This case presents such a situation. *See Woods Exploration & Producing Co. v. Arkla Equip. Co.*, 528 S.W.2d 568, 571 (Tex.1975) (severing portion of judgment awarding attorney's fees, reversing that portion of judgment, and remanding cause).[15] Concluding that the matter of

---

15. We note that *Woods* issued the day after the Texas Supreme Court had adopted an amendment to former Rule of Civil Procedure 434, the predecessor to rule 44.1, to provide (as does current rule 44.1(b)) that "a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested." *See* Tex.R. Civ. P. 434, 525–526 S.W.2d (Tex. Cases) LVI–LVII (1975, repealed 1986). Although that amendment to former rule 434 did not become effective until January 1,

1976, which was after *Woods* had issued, we doubt that the supreme court intended to overrule its own decision in *Woods* by an amendment that it had adopted just the day before it issued *Woods*. Furthermore, our Court has followed *Woods's* holding concerning attorney's fees since the 1976 amendment of rule 44.1's predecessor. *See Gen. Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 602 (Tex.App.-Houston [1st Dist.] 1993, writ denied); *Pelto Oil Co. v. CSX Oil &*

the amount of attorney's fees is severable from the remainder of the judgment, we reverse only that portion of the judgment awarding attorney's fees to Traylor.

### The Validity of the Will and the Propriety of Probating the Will Copy

#### A. The Will Copy

The March 13, 1999 will consisted of five pages. The first three pages appeared in larger font and named Wanda as executrix of his estate "without bond," with George as alternate executor. On the will's third page appeared the following distributions:

| | |
|---|---|
| To Wanda Walker: | 30 percent of my estate |
| To George C. Brown: | 30 percent of my estate |
| To Leonia Simpson: | 20 percent of my estate |
| To James Austin: | 10 percent of my estate |
| To Lucy Traylor: | 10 percent of my estate |

Also on the third page, immediately following the distributions, appeared the following recital:

> I herewith affix my signature to this will on this the 13th day of March, 1999, at Houston, Texas, in the presence of the following witnesses, who witnessed and subscribed this will at my request and in my presence.
>
> [notary seal of Pamela Yancy]

No signature appeared on page three, however. Rather, on page four, in smaller and different typesetting, appeared the following:

> STATE of Texas
> COUNTY of Harris

Before me, the undersigned authority authorized to take acknowledgments and administer oaths, personally appeared

Henry J.[16] Brown    *Henry Brown*[17]

*Henry Brown*

who after being having [sic] duly sworn or affirmed to tell the truth, stated:

1. That Henry J. Brown declared this instrument to be his last will and testament to the witnesses.

2. That Henry J. Brown signed this instrument in their presence.

3. That the witnesses signed as witnesses in the presence of Henry J. Brown and each other.

4. That Henry J. Brown is well known to the witnesses, and the witnesses believe Henry J. Brown to be of lawful age, of sound mind and under no undue influence or constraint.

*Pamela A. Yancy*

Officer

Title of Officer: Notary

My Commission Expires: 01–29–2002

[notary seal of Pamela Yancy]

The fifth and final page of the will copy, which appeared in the same font as that on page four, read as follows:

### ATTESTATION CLAUSE

On the date above written, Henry J. Brown, well known to us, declared to us, and in our presence, that this instru-

---

*Gas Corp.*, 804 S.W.2d 583, 588 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Therefore, under *Woods* and its progeny, unliquidated attorney's fees are, in effect, not considered "unliquidated damages" for purposes of rule 44.1(b).

16. The "J." in "Henry J. Brown" was crossed through by hand everywhere that it appeared

in the March 13, 1999 will; the cross-throughs were accompanied by the initials "PY," ostensibly indicating that Yancy had made the changes.

17. Names appearing in this font are signatures.

ment, consisting of $\underline{5}$[18] pages, is his last will and testament, and Henry J. Brown then signed this instrument in our presence, and at Henry J. Brown's request we now sign this will as witnesses in each other's presence. Further that Henry J. Brown, appeared to us to be of sound mind and lawful age, and under no undue influence.

Witness:

_Melva L. Collins_____

Address:  [address indicated]_____

Witness:

_Wanda Walker_____

Address:  [address indicated]_____

Witness:

_Darryl K. Walker_____

Address:  [address indicated]_____

[notary seal of Pamela Yancy]

## B.  The Law

■ "Every person who meets the requirements prescribed in Section 57 of the Probate Code 'shall have the right and power to make a last will and testament, under the rules and limitations prescribed by law.'" *Estate of Morris*, 577 S.W.2d 748, 756 (Tex.Civ.App.-Amarillo 1979, writ ref'd n.r.e.) (quoting TEX. PROB.CODE ANN. § 57 (Vernon 2003)). "When one meets the legal requirements, properly executes a will and provides for a disposition of his property not violative of public policy, his testamentary disposition should be respected." *Id.*

18.  The handwritten number "5" appears to have been written over the handwritten number "2," although what had been written below the 5 is somewhat unclear. The number 5 is accompanied by the initials "PY," ostensibly indicating that Yancy had made the change to "5."

19.  *See Franklin v. Martin*, 73 S.W.2d 919, 920 (Tex.Civ.App.-San Antonio 1934, writ ref'd);

■ To be valid, every will must, with exceptions inapplicable here,

(1) be in writing and signed by the testator in person or by another person for him by his direction and in his presence and

(2) if not wholly in the testator's handwriting, be attested by two or more credible witnesses above the age of 14 years, who must subscribe their names thereto in their own handwriting and in the testator's presence.

TEX. PROB.CODE ANN. § 59(a) (Vernon 2003). "[A]ttestation of a will is the act of witnessing the performance of the statutory requirements to a valid execution of the will." *Zaruba v. Schumaker*, 178 S.W.2d 542, 543 (Tex.Civ.App.-Galveston 1944, no writ). A "credible" witness means a competent witness. *Triestman v. Kilgore*, 838 S.W.2d 547, 547 (Tex.1992). "A competent witness to a will is one who receives no pecuniary benefit under its terms." *Id.* The witnesses need not see the testator sign the will, as long as they can attest, from direct or circumstantial facts, that the testator in fact executed the document that they are signing.[19] Neither must they sign the will in each other's presence. *See, e.g., Zaruba*, 178 S.W.2d at 543; *Davis v. Davis*, 45 S.W.2d 240, 241 (Tex.Civ.App.-Beaumont 1931, no writ).

■ Because the will copy did not contain a self-proving affidavit,[20] Traylor, as the will's proponent, had to prove the following:

*Venner v. Layton*, 244 S.W.2d 852, 856 (Tex. Civ.App.-Dallas 1951, writ ref'd n.r.e.); *Gainer v. Johnson*, 211 S.W.2d 789, 791 (Tex.Civ. App.-Galveston 1948, no writ).

20.  *See* TEX. PROB.CODE ANN. § 59(a) (Vernon 2003) (allowing for wills to be self-proved by affidavits of testator and subscribing witnesses meeting certain requirements).

(1) ... that the testator, at the time of executing the will, was at least eighteen years of age ... and was of sound mind; and

(2) ... that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will; and

(3) [t]hat such will was not revoked by the testator.

TEX. PROB.CODE ANN. § 88(b) (Vernon 2003). "No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by the testator destroying or canceling the same, or causing it to be done in his presence." *Id.* § 63 (Vernon 2003). When a will that was last seen in the testator's possession cannot be found after his death, a rebuttable presumption of revocation arises. *See In re Estate of Capps,* 154 S.W.3d 242, 245 (Tex.App.-Texarkana 2005, no pet.). That presumption may be overcome by proof and circumstances contrary to the presumption or by proof that the will was fraudulently destroyed by another person. *Id.*

Because she sought to probate a copy of a March 13, 1999 will, rather than the original will, Traylor also had to "proceed under section 85 of the Probate Code, which provides the requirements for proving a 'written will not produced in court.' " *Garton v. Rockett,* 190 S.W.3d 139, 145 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (quoting TEX. PROB.CODE ANN. § 85 (Vernon 2003)).

A written will which cannot be produced in court shall be proved in the same manner as provided in [Probate Code section 84] for an attested written will or an holographic will, as the case may be, and the same amount and character of testimony shall be required to prove such will as is required to prove a written will produced in court....

TEX. PROB.CODE ANN. § 85. Additionally, section 85 requires that

the cause of [the written will's] nonproduction ... be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced, and the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read.

*Id.* Section 84, the requirements of which section 85 incorporates, provides in pertinent part that, "[i]f not self-proved as provided in this Code, an attested written will produced in court may be proved: (1) By the sworn testimony or affidavit of one or more of the subscribing witnesses thereto, taken in open court." *Id.* § 84(b)(1) (Vernon 2003).

## C. The Charge

In issue one, George argues that the trial court erred in "failing to submit a proper jury question on the attestation requirement."

■ "Rule 277 of the Texas Rules of Civil Procedure requires a trial court to submit 'such instructions and definitions as shall be proper to enable the jury to render a verdict.' " *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997) (quoting TEX.R. CIV. P. 277). "This rule, we have recognized, affords the trial court considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury." *Id.* "An instruction is proper if it finds support in any evidence of probative value and if it might be of some assistance to the jury in answering the questions submitted." *Evans v. Allwhite,* 111 S.W.3d 282, 284 (Tex. App.-Texarkana 2003, no pet.).

In pertinent part, the jury charge and verdict read:

## QUESTION NO. 3

Do you find from a preponderance of the evidence that the individual or individuals named below subscribed his or her name in his or her own handwriting to the purported will dated March 13, 1999 while in the presence of Henry Brown at a time when he or she was above the age of 14 years?

## INSTRUCTION

One requirement of a valid typewritten will is that the witnesses sign in the actual presence or conscious presence of the testator. Conscious presence means that Henry Brown was able to see the witnesses to the will from his actual position at the time, or at most, from such position as slightly altered, where he has the power readily to make the alteration without assistance. *There is no requirement that the witness know that he or she is signing a will.*

Answer: Yes or No

Melva L. Collins    Answer:    Yes

Wanda Walker    Answer:    Yes

Darryl K. Walker    Answer:    Yes

Pamela A. Yancy    Answer:    Yes

(Emphasis added.)

George proposed the following jury question, which the trial court rejected in writing:

## QUESTION 1:

Do you find that Henry Brown executed the purported will dated March 13, 1999 with all the formalities to make it a lawful and valid will?

You are instructed that all of the formalities required by law to make a valid will are as follows:

1. The will must be in writing;

2. The testator must be 18 years or older;

3. The testator must personally sign the will;

4. The will must be attested by two or more credible and disinterested witnesses above the age of 14 years who each subscribe their names to the will in their own handwriting.

"Attested" means that the testator *acknowledged to the witnesses that it was his will* and the witness [sic] signed it at the request of the testator, and in the presence of the testator.

"Disinterested" means that a person that [sic] does not stand to benefit from probate of the instrument as a will.

Answer "Yes" or "No"

Answer: _____

(Emphasis added.)

George argues that his proffered charge was correct because Texas law requires publication by the testator, that is, that the testator have told the witnesses that the document that they are signing is his will. In rejecting George's charge and charging the jury as it did ("There is no requirement that the witness know that he or she is signing a will."), the trial court implicitly rejected George's statement of Texas law.

The Probate Code does not expressly provide that the testator publish to the subscribing witnesses that the document that they are witnessing is his will. *See* Tex. Prob.Code Ann. §§ 59, 84, 88. Only two opinions have addressed whether publication is required, and only one of them has done so clearly. The case in which the court clearly held that Texas law does not require publication was *Davis v. Davis. See id.,* 45 S.W.2d at 241. In *Davis,* the trial court found that the testator did not tell one of the attesting witnesses that the document that the witness signed was the

testator's will and that that witness did not, in fact, know that the document that he signed was the testator's will. *Id.* In upholding the will's probate, the *Davis* court explained:

"Publication," in relation to the making of wills, is the act of declaring or making known to the witnesses that the testator understands and intends the instrument subscribed by him to be his last will and testament. Publication of a will, or the calling the attention of the witnesses to the will, by the testator, that the instrument which they are requested to attest is his will, is not a prerequisite to its legality unless required by statute.

. . . .

Generally, it is not essential to the validity of a will that it should be read over to the witnesses thereto, nor that they should know its contents. Nor is it necessary, in jurisdictions where publication is not required, that at the time they signed as witnesses they knew that the instrument was the testator's will.

In this state, the law, [Probate Code section 59's predecessor],[21] . . . does not require the publication of a will, nor does it require that the testator inform the attesting witnesses that the instrument to be attested is his will. . . . Under our statute, to hold that because the testator did not tell an attesting witness

that the instrument he was signing was the testator's will rendered the will illegal would be to read into the statute a prerequisite to the validity of the will that the Legislature did not include. It would be to superadd a condition or requirement not expressed in the law. . . . As we have stated above, under the statute of Texas, publication of the will or knowledge of the attesting witness that the instrument signed by him was a will are not required.

*Id.* (citations omitted).

In contrast, in *Keding v. Kveton,* issued by our predecessor Court in 1923, we sustained on rehearing the appellants' contention that

while it is shown that the two persons whose names appear on the will as witnesses did, in fact, subscribe their names to the instrument, they did not attest the same, as required by [the predecessor to Probate Code section 59][22] . . . as being the will of John Kveton, that is, . . . *there was no proof that they or either of them saw John Kveton sign said instrument, or that he told them that it was his will, or that any one else told them in the presence and hearing of John Kveton that it was his will.*

*Id.,* 254 S.W. 612, 614 (Tex.Civ.App.-Galveston 1923, no writ) (op. on reh'g) (emphasis added).[23] Having sustained this contention, the *Keding* Court reversed the

---

**21.** The version of section 59(a)'s predecessor on which the *Davis* court based its publication holding was substantively similar to the pertinent portion of current Probate Code section 59(a) (that is, the portion of section 59 preceding the portion concerning self-proving affidavits). *See Davis v. Davis,* 45 S.W.2d 240, 241 (Tex.Civ.App.-Beaumont 1931, no writ) (quoting former Texas Revised Civil Statutes article 8283).

**22.** The version of section 59(a)'s predecessor on which the *Keding* court based its holding on rehearing, was substantively similar to the pertinent portion of current Probate Code

section 59(a) (that is, the portion of section 59 preceding the portion concerning self-proving affidavits). *See Kveton v. Keding,* 286 S.W. 673, 676 (Tex.Civ.App.-Galveston 1926, writ dism'd w.o.j.) (subsequent appeal in same case; quoting former Texas Revised Civil Statutes article 7857).

**23.** George does not rely on *Keding,* but instead relies on several other opinions for his position that Texas law requires publication. We distinguish them. In *Reese v. Franzheim,* this Court refuted a challenge that no one told the witnesses that they were signing a will because the attestation clause recited that

judgment admitting the will to probate and remanded the cause. *Id. Keding* has been interpreted not as holding that publication is required, but instead as holding that the witnesses could not attest that the testator had signed (*i.e.*, executed) the will:

> In this connection, attention is directed to *Keding v. Kveton* . . . , a case in which lack of knowledge on the part of the witnesses appeared in the facts, but in which the decision of the court was apparently based on the failure to prove that the signature of the testator was his, in view of the fact that the will was not signed by him in the presence of the witnesses. In this case it appeared that the two persons whose names were on the will as witnesses did, in fact, subscribe their names to the instrument, but there was no proof that they or either of them saw the testator sign the instrument or that he told them that it was his will, or that anyone else told them in the presence and hearing of the testator that it was his will, and one of the witnesses testified that after he had signed the paper he had said to the other witness that it was the first paper he had ever signed without knowing what it was. Holding that the will was not properly executed, the court stated that there was no evidence showing either that the testator signed the paper offered for probate, or that his signature

was attested by two witnesses as required by law.

Wade R. Habeeb, L.L.B., Annotation, *Wills: Necessity that Attesting Witness Realize Instrument Was Intended as Will*, 71 A.L.R.3d 877, 894 n. 14 (1976) [hereinafter "Habeeb"]. Thus, the *Keding* Court's holding may be read simply as having been that the will could not be proved because the witnesses could not attest that the testator had signed the document that the witnesses signed. *See Keding*, 254 S.W. at 614 (op. on reh'g) (explaining, "Having finally reached the conclusion that there was no evidence that John Kveton signed the paper offered for probate, or that his signature was attested by two witnesses as required by law, we grant the motion for rehearing. . . .").

However, another commentator, while agreeing that *Keding* "may be explained as a holding that the witnesses could not attest . . . to . . . the execution of the will because they did not see the testator sign and did not see a signature, and the testator did not acknowledge in their presence that he had signed," has also recognized that "[t]he emphasis laid upon the testimony that the witnesses were not told by the testator, or in his presence, that the instrument was a will, is significant." *See* 9 GERRY BEYER, TEXAS PRACTICE: TEXAS LAW OF WILLS, § 18.19 (2002) [hereinafter "Beyer"]; *see also Kveton v. Keding*, 286 S.W.

---

publication had been made. *See id.*, 381 S.W.2d 329, 329–30 (Tex.Civ.App.-Houston 1964, writ ref'd n.r.e.). However, we expressly indicated that it was "unnecessary to determine [in that case] whether publication is necessary under the Probate Code of Texas"; accordingly, we did not reach the issue. *Id.* at 330. In none of the other cases on which George relies did the court directly address the issue, and at least two of the opinions neither discussed publication nor used that term. *See In re Estate of Hutchins*, 829 S.W.2d 295, 299 (Tex.App.-Corpus Christi, 1992) (noting only that attestation clause recited that publication had occurred and not

discussing issue), *writ denied sub nom. Triestman v. Kilgore*, 838 S.W.2d 547 (Tex.1992); *Mossler v. Johnson*, 565 S.W.2d 922, 957 (Tex. Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.) (not using term publication and not discussing issue); *In re Estate of Page*, 544 S.W.2d 757, 760 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.) (merely using term once; publication not an issue); *Ludwick v. Fowler*, 193 S.W.2d 692, 694–95 (Tex.Civ. App.-Dallas 1946, writ ref'd n.r.e.) (not discussing issue, but instead merely noting that testatrix's attorney had asked witness to sign will; issue was whether evidence showed that testatrix had signed will).

673, 674–75 (Tex.Civ.App.-Galveston 1926, writ dism'd w.o.j.) (subsequent appeal in Keding case). In sum, although Keding does not expressly hold that publication is required, it may be read as so indicating.

■ We agree with the Davis court's holding that publication of the actual contents of a will is not required and, thus, that a witness need not know that he or she is signing a will; we interpret Keding as holding merely that the witnesses could not attest to the testator's execution of the document that they signed; and we disavow any reading of Keding that implies that the Probate Code requires actual publication of a will's contents or, for that reason, that the witnesses know that they are signing a will. There is simply no such requirement in the plain language of Probate Code section 59. See TEX. PROB.CODE ANN. § 59(a) ("Every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator in person or by another person for him by his direction and in his presence, and shall, if not wholly in the handwriting of the testator, *be attested by two or more credible witnesses above the age of fourteen years who shall subscribe their names thereto in their own handwriting in the presence of the testator.*") (emphasis added); Davis, 45 S.W.2d at 241; cf. Leeder v. Leeder, 161 S.W.2d 1112, 1114 (Tex.Civ. App.-San Antonio 1942, writ ref'd) (in dictum, stating, "It is not necessary for the subscribing witnesses to know the contents of the will. He is simply a witness to the signature of the testator."). This Court,

like some of its sister courts, has held that attestation means "the act of witnessing the performance of the statutory requirements to a valid execution of the will." See, e.g., Zaruba, 178 S.W.2d at 543. Those statutory requirements do not include publication of a will's contents or, for that reason, that the witnesses know that they are signing a will. See TEX. PROB. CODE ANN. § 59(a). In the absence of a requirement of publication, it is generally unnecessary that the subscribing witnesses know that they are attesting a will. See Habeeb, 71 A.L.R.3d at 880 ("[T]he courts have held or recognized in numerous cases that in the absence of a statute or rule requiring publication, it is not necessary that the witnesses should know that the instrument was intended to take effect as a will. And some cases have applied this rule even though the lack of knowledge by the witnesses that it was a will was due to the testator purposely misleading them. In the absence of a statute or rule requiring publication, the courts have generally held that knowledge by the witnesses that the instrument that they are witnessing is a will is not made necessary by ... a statute providing that wills should be attested and subscribed by witnesses.") (footnotes omitted). We decline to imply a requirement that the Legislature did not include.[24]

We overrule issue one.

### D. Legal–Sufficiency Challenges

■ In issue two, George argues that the evidence is legally insufficient to show

24. *Davis* was decided in 1931. In 1955, the Legislature amended Probate Code section 59 to allow a will to be self-proved by affidavit. *See* Act of March 17, 1955, 54th Leg., R.S., ch. 55, § 59, 1955 Tex. Gen. Laws 88, 107–08 (current version at TEX. PROB.CODE ANN. § 59(a)). Under this portion of current section 59, a valid self-proved affidavit must recite, among other things, that the testator "declared to me and to the said witnesses in

my presence that the said instrument is his will" and that "the said witnesses, each on his oath stated to me, in the presence and hearing of the said testator, that the said testator had declared to them that said instrument is his last will and testament, and that he executed same as such and wanted each of them to sign it as a witness...." *Id.* The purpose of the self-proving affidavit is to relieve the will's proponent of the burden of presenting

that the will copy was executed with all of the formalities and solemnities to make it a valid will. In issue five, George argues that the evidence was legally and factually insufficient both to establish the cause of the non-production of the original will and to establish that the will was not revoked.

■ " 'No¨ evidence' points may be raised by either (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue or (5) a motion for new trial." *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). With the one exception noted above concerning attorney's fees, George did none of these things for any legal-sufficiency challenge that he raises on appeal. We thus hold that George waived all legal-sufficiency challenges but that concerned with Traylor's attorney's fees. *See id.*

Accordingly, we overrule issues two and five in their entirety.

### E. Factual–Sufficiency Challenges

In issue three, George argues that the evidence is factually insufficient to show

that the will copy was executed with all of the formalities and solemnities required to make it a valid will. In issue six, George argues that the evidence is factually insufficient both to establish the cause of the non-production of the original will and to establish that the will was not revoked. In issue four, George asserts that the evidence is factually insufficient to support the jury's negative finding on his forgery cause of action.

### 1. Standards of Review

■ In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Bay, Inc. v. Ramos*, 139 S.W.3d 322, 329 (Tex.App.-San Antonio 2004, pet. denied). In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant had the burden of proof, the appellant must show that "the adverse finding is against the great weight and preponderance of the

witnesses to prove the will. *See id.* § 59(c) (Vernon 2003) ("A self-proved will may be admitted to probate without the testimony of any subscribing witness...."); *Boren v. Boren*, 402 S.W.2d 728, 729 (Tex.1966), *legislatively abrogated on other grounds by* TEX. PROB. CODE ANN. § 59(b) (Vernon 2003). Its purpose is not, however, "to add anything to the list of formalities required for the execution of a will." Beyer, § 18.50 at 421; *see* TEX. PROB. CODE ANN. § 59(c) ("A self-proved will may be admitted to probate without the testimony of any subscribing witness, *but otherwise it shall be treated no differently than a will not self-proved.*") (emphasis added); *Boren*, 402 S.W.2d at 729 ("It was not the purpose of the Legislature [in allowing for self-proved wills] to amend or repeal the requirement that the

will itself must meet the requirements of the law."). Therefore, the requirement that a self-proving affidavit contain the witnesses' averment that the testator published the will to them does not alter the other provisions of section 59(a), which do not require publication of the will itself. *See* Beyer, § 18.50 at 421 n. 2 ("This [self-proving-affidavit] declaration, amounting to a 'publication' of the instrument as the testator's will, is not essential to validity.... It is clear, however, that the [self-proving] certificate must contain this recitation in order that the will be treated as 'self proved.' Presumably, parol evidence would be admissible to prove the [publication] recitation false, in which event the will would not be a self-proved will but would be valid, in the absence of other objections.").

evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001).

■ In either type of factual-sufficiency challenge, we must examine both the evidence supporting and that contrary to the judgment. *See id.; Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Additionally, the jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003).

## 2. Requirements of Valid Will

The jury expressly found that Henry had testamentary capacity when he executed the March 13, 1999 will, that he signed the will, that four witnesses above the age of 14 signed the will in Henry's presence, and that the will copy was a true and correct copy of the March 13, 1999 will. In issue three, George argues that the evidence is factually insufficient to show that the March 13, 1999 will was executed with the formalities and solemnities required to make it valid because (1) the signature on the will was not Henry's; (2) Wanda was an incompetent witness because she was a devisee; (3) Darryl was an incompetent witness because "he admitted in his [much later] application for appointment as administrator that he is an 'interested person'"; (4) Henry did not publish the will because he never declared to anyone on March 13 that the will was his, he did not request that anyone sign it as a witness, and no one (allegedly including Henry) read the will or knew its contents; (5) the will's fourth page was not a part of the will; and (6) "[t]he contents of what Henry . . . knowingly and voluntarily exe-

cuted, if anything, are unknown" because "suspicious circumstances abound."

### a. Execution

■ Because we must examine both the evidence supporting and that contrary to the judgment in our factual-sufficiency review,[25] we begin with the evidence supporting the verdict. When viewed in the light most favorable to the verdict, the following evidence supports the jury's implicit finding that the March 13, 1999 will was validly executed. Yancy testified that Henry signed the will while Wanda and Darryl were at his home, that Henry sat at his table while the witnesses signed the will, that each of the witnesses walked up while Henry was sitting at the table and signed his or her name to the will in Henry's presence, and that the witnesses were over 14 years of age. *See* TEX. PROB. CODE ANN. § 59(a). She further testified that Henry signed the will, that he signed her notary log twice that day in an attempt to get a consistent signature, and that his signatures appeared different because his lack of several fingers made his signatures "chicken scratchy." *See id.* Traylor confirmed that, although Henry was missing fingers, he could still hold a pencil with his hand to write his initials; that his signature was inconsistent because of his illnesses; and that the signature on the will copy was Henry's. She also testified, "I don't really know anything about his hands getting stiff as a board because," even after 1998, "he did a good job of putting his self [sic] up on the bed" by using "that hand to pull himself up." The record also contains examples of Henry's signature, made after March 1999, from other contexts—from which evidence a rational jury could conclude that Henry could sign his name in March 1999. Yancy testified that,

**25.** *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001); *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989).

on March 13, 1999, Henry was over 18 years of age, was of sound mind, knew what he was doing and what he was signing, knew who Wanda and Darryl were, and knew what his property was and how much he had and that nothing would have led her to believe that Henry did not know what he was doing that day. Darryl confirmed that Henry was of sound mind when they came to sign a document at his home, that Darryl and Wanda signed the document (which was Henry's will) at Henry's request and in front of Henry while he was seated at the table, and that he and Wanda were over 14 years old. Collins also signed the will at the table at which Henry was seated. Traylor had no doubts that Henry executed the March 13, 1999 will. This evidence supports the jury's finding that Henry signed the will, that the four individuals whom the jury found were witnesses each signed the will in his presence, that Henry and the witnesses were the requisite age at the time of the will's signing, and that Henry was of sound mind and knew what property he had on March 13, 1999. *See id.* §§ 59(a), 84(b), 85, 88(b)(1)-(2).

In support of his factual-sufficiency challenge, George relies on the following evidence that does not support the jury's verdict: there was evidence that the signature on the will copy did not look like Henry's, that he had not physically been able to sign his name since before 1999, and that his hands were stiff as boards. We hold that this evidence does not render the evidence supporting the complained-of findings so weak as to be clearly wrong or manifestly unjust. *See Cain,* 709 S.W.2d at 176.

**b. Henry's Knowledge of the Will's Contents**

■ We begin our factual-sufficiency review with the following evidence, which supports an implicit finding that Henry knew the will's contents before he signed it.[26] *See Plas–Tex, Inc.,* 772 S.W.2d at 445. Yancy testified that she crossed out the "J." in Henry's name and changed the page number while Henry was sitting at the table and before he or the witnesses signed the will, from which can reasonably be inferred that Henry saw those changes being made. Yancy also testified that Henry had asked her to draft the will in 1999 and generally told her what substantive provisions he wanted in it; that the only article that she changed after Henry's initial review of the draft will, and at his direction, was clause IV, which concerned the care of his wife; that she gave Henry a copy of the final version of the will, with clause IV's alteration and consisting of five pages, before the day of the signing; and that he was the one who pointed out to her on the day of the signing that his middle initial was not "J." This evidence supports that Henry read the will, that the will consisted of five pages when he read it, and that Henry knew its contents.

In support of his factual-sufficiency challenge, George relies on the following evidence that does not support the complained-of finding. First, the will copy's last two pages undisputedly differed in font from that of the first three pages, and the last two pages contained no definite references to the preceding three pages. Second, Henry's signature or initials did not appear on any page with testamentary dispositions. Third, Yancy's testimony about the number of pages in the will that she gave to Henry to review was contradictory. Fourth, the last page of the will copy appears to have the number "5" written over the number "2" in the space

---

**26.** We construe George's factual-sufficiency challenge as attacking the jury's express finding that Henry had testamentary capacity when he executed the March 13, 1999 will.

provided for the will's number of pages, and Yancy's initials appear beside the change. We have reviewed this evidence and the entire record, and we cannot say that the evidence supporting the complained-of jury finding is so weak as to make the finding clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176. As for Yancy's credibility and the weight to be given the circumstances that George claims were suspicious, we note that these matters were generally for the jury. *See Jackson,* 116 S.W.3d at 761.

### c. Number of Pages

We start our factual-sufficiency review with the following evidence, which supports the jury's implicit finding that the March 13, 1999 will consisted of five pages and its express finding that the will copy was a true and correct copy of the will. *See Plas–Tex, Inc.,* 772 S.W.2d at 445. Yancy testified that the will copy, a five-page document that was admitted into evidence, was a correct copy of the actual will that Henry had signed on March 13, 1999. *See* Tex. Prob.Code Ann. § 84 (requiring that "the contents of such will [that is not produced in court] . . . be substantially proved by the testimony of a credible witness who has read it or heard it read."). This evidence supports the jury's express finding that the will copy, which consisted of five pages, was a true and correct copy of the March 13, 1999 will.

George relies on the same evidence, set out in the immediately preceding section, that does not support the jury's complained-of finding. We have already discussed why that evidence does not render the evidence supporting the complained-of jury findings so weak as to make them clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176.

### d. Publication

We also reject George's factual-sufficiency challenge based on lack of publication. First, we have already held that Texas law does not require the testator to publish the will to the witnesses. *See Davis,* 45 S.W.2d at 241. Therefore, it was immaterial that Collins did not read the will, or that Henry did not speak to her about it, before she signed the will. *See Leeder,* 161 S.W.2d at 1114 ("It is not necessary for the subscribing witnesses to know the contents of the will. He is simply a witness to the signature of the testator."); *Davis,* 45 S.W.2d at 241 ("Generally, it is not essential to the validity of a will that it should be read over to the witnesses thereto, nor that they should know its contents."); *Warren v. Ellis,* 137 S.W. 1182, 1187 (Tex.Civ.App.-Galveston 1911, no writ) ("The statute does not require that the witness shall sign at the request of the testator, but if that were required we think that it might be inferred" under facts of that case, which indicated an implicit request). Neither was it material that Darryl did not know when he entered Henry's house that he was going to sign a will or that he did not know what he signed or on what day he signed it. *See Davis,* 45 S.W.2d at 241 ("In this state, the law . . . does not require . . . that the testator inform the attesting witnesses that the instrument to be attested is his will. . . . [P]ublication of the will or knowledge of the attesting witness that the instrument signed by him was a will are not required."). Moreover, Darryl testified that, when he went into Henry's home, Henry said, "I just need you to come with your mom and sign." *See Davis,* 45 S.W.2d at 241.

■ Second, even if the statute could somehow be read to require that the witnesses know that they are signing a will (*i.e.,* to require publication), the following evidence supports that that requirement

was satisfied with respect to Yancy, Collins, and Wanda. Yancy drafted the will, and she testified that Henry contacted her and asked her to come to his home so that he could sign the will. As for Collins, she testified that she signed what she believed was a will; that she signed the will at the table at which Henry was also sitting; that Yancy, her friend, had asked her to sign; and that Collins knew what she was there for that day. Collins also saw Henry and Yancy speaking before Collins signed, although she could not hear what they said. The testator's request that one sign his will as a witness may be implicit.[27] As for Wanda, Henry told Yancy that he wanted her to witness the will because Wanda was to be the executor and because he trusted her. Yancy testified that she "ma[d]e plans" to get the witnesses to the will signing, although she also said that Henry was the one who did so. In any event, Wanda had a conversation with Henry at his house on March 13, 1999, although Yancy did not overhear that conversation, and, according to Yancy, it would be fair to say that Wanda knew that she was there that day to sign a will and that Wanda "knew that she was executor and a beneficiary" under Henry's will. Additionally, as set out above, Darryl testified that Henry told them that day that "I just need you to come with your mom and sign."

George offers no record references to evidence the contrary, only general statements that "Henry Brown never declared to anybody on that date that the will copy was his will" and that he "did not request that anybody sign the will as an attesting witness." Collins gave conflicting testimony as to whether she knew that what she signed was a will, but credibility issues are generally for the jury. *See Jackson,* 116 S.W.3d at 761. Having reviewed the entire record, we cannot say that, even if publication were required, the evidence supporting an implicit finding of publication would have been so weak as to have rendered that implicit finding clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176.

### e. Witness Credibility

■ We also reject George's factual-sufficiency challenges based on the competency of the subscribing witnesses. A "credible" witness is a competent witness. *Triestman,* 838 S.W.2d at 547. "A competent witness to a will is one who receives no pecuniary benefit under its terms." *Id.* The following evidence supports the jury's finding that the will was properly witnessed. The jury expressly found that Yancy was a witness. Yancy testified that she signed the will as a notary and that she was a witness and that Henry was of sound mind, knew what he was doing and what he was signing, and knew what his property was and how much he had on the

---

27. *See Houston v. Norton,* 264 S.W. 231, 233–34 (Tex.Civ.App.-El Paso 1924, no writ) (Higgins, J., concurring) (quoting 40 Cyc. 1115: " 'No formal request is necessary. It is not material how the request is conveyed to the witnesses so long as it appears that the request was the free and intelligent act of the testator. It may be implied from the acts or conduct of the testator and from the attendant circumstances as by his asking that the witnesses be sent for to attest the execution or by assent to their signing, by affirmative response to a question as to whether the testator wanted the will attested, or by the reading of the attestation clause in the testator's presence after signing by the witnesses. So a request may be implied by acquiescence in the request of another that the will be signed. Such request may be made by any person so long as the testator acquiesces or approves of it or by his conduct such acquiescence or approval can be implied.' "); *Warren v. Ellis,* 137 S.W. 1182, 1187 (Tex.Civ.App.-Galveston 1911, no writ); *see also Kveton v. Keding,* 286 S.W. 673, 676 (Tex.Civ.App.-Galveston 1926, writ dism'd w.o.j.) (quoting same treatise as did concurring justice in *Houston,* 264 S.W. at 233–34).

day that he executed the will. She also testified that Henry instructed her on how to draft the will's substance and to matters indicating that she understood that Henry had reviewed the will before signing it. She signed after an attestation clause that recited, among other things, that Henry had personally appeared before her and that he had declared to the witnesses that the instrument was his will. She was not a beneficiary under the terms of the will. A notary may be considered, and can be competent to be, a subscribing witness to a will.[28] Neither was Darryl an incompetent witness for the reason that George argues on appeal, which was that Darryl alleged in January 2005, in his application for his appointment as administrator, that he "[wa]s a person interested" in the estate. Whether a witness is credible, as required by section 59(a), is ascertained at the time of the witness's signing the will. *Cf. id.* (providing, "A competent witness to a will is one *who receives no pecuniary benefit under its terms*[,]" and "The will itself constitutes some evidence that the wit-

nesses were credible to attest the will *at the time the will was executed.*") (emphasis added). Later events cannot affect the witness's status as a competent witness, at the relevant time, to the will's execution. Accordingly, even assuming without deciding that Darryl's January 2005 allegation could somehow prevent his being a credible witness if he had witnessed a will after January 2005, that 2005 allegation could not affect his credibility to sign a will in 1999. Darryl was not a beneficiary under the March 13, 1999 will, and George points to nothing else in the trial record showing that Darryl was not a credible witness when he signed the will.[29] *Cf. id.* ("The will provides no pecuniary benefit to either witness. The will itself constitutes some evidence that the witnesses were credible to attest the will at the time the will was executed.").

In contrast, it is undisputed that Wanda was not a credible witness at the time that she signed the will—not for having been named executor,[30] but for having been a devisee. *See id.* However, Wan-

---

**28.** *See Saathoff v. Saathoff*, 101 S.W.2d 910, 912 (Tex.Civ.App.-San Antonio 1937, writ ref'd) (holding that county notary public was proper subscribing witness to will, when notary signed after acknowledgment that recited that testator had personally appeared before him, was known to notary, and acknowledged that he executed instrument for purposes and considerations expressed therein); *Estate of Teal*, 135 S.W.3d 87, 91 (Tex.App.-Corpus Christi 2002, no pet.) (holding that notary who did not intend to sign will as subscribing witness to will nonetheless served as credible, subscribing witness when she asked testator about his will, confirmed that he was familiar with will's contents and dispositions, and confirmed that he signed it of his own free will); *Reagan v. Bailey*, 626 S.W.2d 141, 142–43 (Tex.Civ.App.-Fort Worth 1981, writ ref'd n.r.e.) (holding that notary was proper subscribing witness to will, when notary signed after acknowledgment that recited that testator had personally appeared before him, was known to notary, and acknowledged that he

executed instrument for purposes and considerations expressed therein).

**29.** Wanda, Henry's niece, predeceased Henry. The basis for Darryl's current interest in the estate thus appears to be Probate Code section 68(a), which provides, "If a devisee . . . who is a descendant of a testator's parent . . . fails to survive the testator . . . , the descendants of the devisee who survived the testator by 120 hours take the devised property in place of the devisee." TEX. PROB.CODE ANN. § 68(a) (Vernon 2003). George's current interest under section 68(a) necessarily did not yet exist at the time that Wanda witnessed Henry's will. George does not argue on appeal that a witness's potential, contingent interest in a will pursuant to section 68(a) can suffice to prevent his being a credible witness at the time that he signs the will.

**30.** *Cf. Moos v. First State Bank of Uvalde*, 60 S.W.2d 888, 889–90 (Tex.Civ.App.-Beaumont 1933, writ dism'd).

da's testimony was not required to establish Henry's will:[31] Yancy's testimony alone sufficed to do so, which itself was corroborated by testimony of various other witnesses. ˌSee Tex. Prob.Code Ann. §§ 84(b)(1), 85. Moreover, the Probate Code requires that only two credible witnesses attest the will, and we have already held that the three other witnesses—Darryl, Yancy, and Collins—were competent to do so. See id. § 59(a). Therefore, the will would not fail if Wanda were considered an incompetent witness. See id.

### f. Conclusion

We have reviewed the entire record, and we cannot say that the evidence supporting the complained-of jury findings is so weak as to have rendered the complained-of findings clearly wrong and manifestly unjust. See Cain, 709 S.W.2d at 176. As for witness credibility and the weight to be given witnesses' testimony, these matters were for the jury. See Jackson, 116 S.W.3d at 761.

We overrule issue three in its entirety.

### 3. Non–Production

■ In part of issue six, George argues that the evidence is factually insufficient to establish satisfactorily the cause of Traylor's non-production of the will.

Because we must examine both the evidence supporting and that contrary to the judgment, our factual-sufficiency analysis begins with evidence supporting the implicit finding that Traylor satisfactorily demonstrated the reason for her not having produced the original will. See Plas–Tex, Inc., 772 S.W.2d at 445. Yancy testified that she left the original will with Henry on March 13, 1999 and that she did not have access to the original will afterwards. She also testified that she saw the original will on April 16, 2001, after Henry's death, in George's possession and that that was the first time since March 13, 1999 that she had seen the original will. According to Yancy, the will that George had that day had the original signatures and notary seal. Traylor confirmed that George retrieved the will from Henry's house on April 16, 2001. George's counsel admitted into evidence an affidavit, by Robert Anderson, attesting that (1) Henry gave him his will, asking Anderson to give the will to George upon Henry's death, and (2) Anderson gave the will to George after Henry's death. Traylor confirmed Anderson's affidavit testimony, based on what Anderson had told her, except adding that Henry gave Anderson the will in an envelope. George also admitted that he was the only person who had the keys to Henry's house and to the burglar bars on it and that the burglar bars were locked after Henry died. In fact, George admitted retrieving Henry's pre-need funeral plan papers from a box on Henry's bedside table soon after Henry's death. This evidence supports the implicit finding that

---

**31.** The issue of whether the bequest to Wanda was voided because she was also an attesting witness is not before us, and we should not be interpreted as holding one way or the other on the matter. See Walling, 863 S.W.2d at 58; see also Tex. Prob.Code Ann. § 61 (Vernon 2003) ("Should any person be a subscribing witness to a will, and also be a legatee or devisee therein, if the will cannot be otherwise established, such bequest shall be void, and such witness shall be allowed and compelled to appear and give his testimony in like manner as if no such bequest had been made."); id. § 62 (Vernon 2003) ("In the situation covered by [section 61], the bequest to the subscribing witness shall not be void if his testimony proving the will is corroborated by one or more disinterested and credible persons who testify that the testimony of the subscribing witness is true and correct, and such subscribing witness shall not be regarded as an incompetent or non-credible witness under Section 59 of this Code.").

Traylor satisfactorily proved why she had not produced the March 13, 1999 will—that is, that George, not she, last had the original will in his possession. *See* Tex. Prob.Code Ann. § 85 (requiring that "the cause of [the written will's] non-production ... be proved" and that "such cause ... be sufficient to satisfy the court that it cannot by any reasonable diligence be produced...."").

In response, George articulates the following five arguments in support of his factual-sufficiency challenge. First, he argues that the above evidence is factually insufficient because "Yancy failed to articulate any visually identifiable characteristics of the alleged original as the basis for her opinion." However, Yancy's testimony that she observed the original signatures and notary seal on the document that George had on April 16 is some evidence to the contrary. Moreover, whether she was a credible witness on this subject, and what weight to give her testimony, were matters for the jury to resolve and do not make the evidence factually insufficient. *See Jackson,* 116 S.W.3d at 761.

Second, George argues that "Yancy is incompetent to testify about ink or other markings on paper" and so to testify about whether she saw the original will in George's possession on April 16. We seriously doubt that only an expert may testify to the originality of a document when, as here, the lay person who testified to the document's originality was the very one who created the document and observed its signing. Nonetheless, even if George were correct, he does not direct us to any place in the record that he objected to Yancy's testimony on the basis that only expert testimony could prove originality; accordingly, his challenge is waived. *See* Tex.R.App. P. 33.1(a)(1).

Third, George argues that Anderson's affidavit testimony that Henry gave him a "will" is "an unsubstantiated legal conclusion that Anderson himself contradicted when he told Traylor that he did not know what was in the envelope" that Henry had given him. Whether Anderson knew that the document that Henry gave him was a will was a contradicted factual matter—Anderson's affidavit showed an understanding that the document was a will, while Traylor's testimony relating what Anderson had told her indicated that Anderson did not know that—for the jury to resolve. *See Jackson,* 116 S.W.3d at 761.

■ Fourth, George argues that Traylor judicially admitted that "George Brown never possessed an original of the will copy" because she testified that George's Exhibit eight, which was undisputedly a copy of the will, was what George had had in his possession on April 16, 2001. However, " '[a] judicial admission must be a clear, deliberate, and unequivocal statement'...." *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex. 2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996)). Traylor's was not such a statement. She testified:

Q: Do you recognize [George's Exhibit eight]?

A: Yes.

Q: When was the first time you saw it?

. . .

A: At George's—at Henry Brown's house.

. . .

Q: Are you sure this is what you saw?

A: Right.

Q: With the little brown stain on it?

A: Yes.

Q: Does this look like an original to you?

A: Right.

This is not a clear and unequivocal statement that George was not the last person to possess the original will. Rather, it is a statement that Traylor thought that that exhibit was an original. Moreover, Traylor testified both that she was "sure" that Exhibit eight was the actual document that George held and that the exhibit "look[ed] like an original" to her. Given her statement that the exhibit "look[ed] like" an original, when it undisputedly was not, her further testimony that she was sure that Exhibit eight was what George had possessed on April 16 was not a clear and unequivocal statement that he had possessed only a copy of the will on that date.

Fifth, George argues that the evidence is factually insufficient because (1) Yancy's testimony was contradictory and speculative and (2) Anderson's affidavit testimony was incredulous and based on surmise and conjecture. The jury was entitled to determine the weight to give the conflicting testimony and to determine which witnesses were credible. *See Jackson,* 116 S.W.3d at 761. The jury's resolution of those issues does not, on this record, make the evidence supporting the complained-of jury findings so weak as to render those findings clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176.

We have reviewed the entire record in the light required for a factual-sufficiency review, and we conclude that the evidence supporting the complained-of implicit finding is not so weak as to render that finding clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176. We thus hold that the evidence is factually sufficient to establish satisfactorily the cause of Traylor's non-production of the March 13, 1999 will. *See* TEX. PROB.CODE ANN. § 85.

We overrule this portion of issue six.

### 4. Non–Revocation

■ The jury expressly found that Henry did not revoke the March 13, 1999 will. In the remainder of issue six, George argues that the evidence was factually insufficient to support the jury's express finding that Henry did not revoke the March 13, 1999 will. Because we must examine both the evidence supporting and that contrary to the judgment, we begin with the evidence supporting the judgment. *See Plas–Tex, Inc.,* 772 S.W.2d at 445. Yancy testified that, to her knowledge, Henry never revoked the March 13, 1999 will by tearing or destroying it after its execution. *See In re Estate of Capps,* 154 S.W.3d 242, 245 (Tex.App.-Texarkana 2005, no pet.) ("The testimony of a witness that, to her knowledge or belief, the testator did not revoke the will has been held sufficient evidence of nonrevocation to support probate of the will."). Traylor opined that she did not feel that Henry would ever change the March 13, 1999 will because "usually whatever Mr. Brown said, Mr. Brown did." Moreover, Yancy testified that she saw the original will in George's possession within days of Henry's death, and Anderson's affidavit and Traylor's testimony indicated that Anderson gave the will to George—all of which testimony supports the jury's finding that Henry did not destroy the March 13, 1999 will and that, instead, George destroyed it. *See* TEX. PROB.CODE ANN. § 63 (Vernon 2003) ("No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, *or by the testator destroying or canceling the same, or causing it to be done in his presence.*") (emphasis added); *In re Capps,* 154 S.W.3d at 245 ("True, an original will's absence [when last seen in testator's possession] creates a rebuttable presumption of revocation; but that presumption can be overcome by proof and circumstances contrary to the presumption

or that it was fraudulently destroyed by some other person.").

George first responds that Traylor "failed to trace an original of the will copy to the hands of any other person" besides Henry, with whom she left it on March 13, 1999. However, the evidence was disputed as to whether the original will was last in the hands of George. The evidence supporting that George last possessed the original will was not so weak as to make the jury's finding clearly wrong or manifestly unjust. George next argues that "there are no circumstances contrary to the presumption of revocation in this case." The immediately preceding paragraph, however, outlines such evidence. Finally, George argues that Traylor's and Yancy's testimony that they did not forge the will "is self-serving, and of 'no material significance,' in rebutting the presumption that the will copy was revoked." Even if George were somehow correct that Yancy's and Traylor's denial of forgery was incompetent evidence, Yancy also testified that she saw the original will in George's hands within days of Henry's death, and Anderson averred that Henry had given him the will to give to George and that Anderson gave the will to George. Although George controverted that evidence in various ways, the resolution of that evidentiary conflict involved, in large part, a determination of witness credibility, which was the jury's province. *See Jackson,* 116 S.W.3d at 761.

George also relies on the following evidence or arguments: (1) Henry tried to execute a different will on his deathbed; (2) Henry did not mention the March 13, 1999 will to anyone but Yancy;[32] and (3) Yancy's, Anderson's, and Traylor's testimony was contradictory or incredible. These matters of witness credibility were

properly left to the jury. *See id.* Moreover, we have reviewed the entire record in the light required for a factual-sufficiency review, and we cannot say, even in light of the evidence on which George relies, that the evidence supporting the complained-of jury finding is so weak as to render that finding clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176. We thus hold that the evidence is factually sufficient to support the jury's finding that the March 13, 1999 will was not revoked. *See* TEX. PROB.CODE ANN. § 88(b)(3).

We overrule the remainder of issue six.

### 5. Forgery

■■■ The jury expressly found that the will copy was not forged. In issue four, George asserts that the evidence is factually insufficient to support the jury's negative finding on his forgery cause of action. Because we must examine both the evidence supporting and that contrary to the judgment, we begin with the evidence supporting the judgment. *See Plas–Tex, Inc.,* 772 S.W.2d at 445. Yancy denied having forged Henry's name on the March 13, 1999 will. This testimony, as well as the evidence outlined in our earlier discussions, supports the jury's finding that the March 13, 1999 will was not forged.

George relies on the following to show that the jury's adverse finding on forgery was against the great weight and preponderance of the evidence. First, he argues that "the lack of evidence that anybody ever made a copy it [sic] indicates that somebody forged the will copy, especially in this case where Henry Brown depended so heavily on others for assistance." However, both parties introduced a copy of the document that Traylor alleged to be the March 13, 1999 will, and the jury found

---

**32.** Actually, there was also testimony that Henry gave the will to Anderson with instruc-

tions for him to hold it.

that that copy was a true and correct copy of the will: there was thus not a "lack of evidence" that the will was copied. In any event, even if a copy of the will had not been made, the jury could have interpreted that fact to mean that Henry simply had not had the will copied, not that the will had been forged. Second, George argues that "Yancy gave clear, direct and positive testimony that she added an unidentified page, and that the only change to the [1999] will copy that Henry Brown knew about or consented to was Yancy [sic] correcting the spelling of his name. This is direct evidence that Henry Brown did not know about or consent to Yancy's page substitution(s)." However, we have already outlined Yancy's testimony that, albeit at times conflicting, indicated that she made the page change in Henry's presence and before he signed the will and that Henry had all five pages of the will to review before he signed. Accordingly, it is simply incorrect to imply that she gave *uncontradicted* testimony that Henry did not approve or know of the page changes; furthermore, because her testimony on this point was somewhat conflicting, it was the jury's province to resolve her credibility on this matter as it did.

We have reviewed the entire record in the light required for a factual-sufficiency review, and we cannot say that the jury's negative finding on forgery is against the great weight and preponderance of the evidence. *See Francis,* 46 S.W.3d at 242. We thus hold that the evidence is factually sufficient to support the jury's finding that the March 13, 1999 will was not forged.

We overrule issue four.

## Appointment of Substitute Dependent Administrator

■ On February 25, 2005, just over two months after the final judgment from which George appealed, the trial court granted Darryl's application to remove Traylor as dependent administrator of Henry's estate and to appoint himself in her place. In issue eight, George argues that the trial court erred in appointing Darryl as dependent administrator.

We lack jurisdiction over this challenge. George filed his notice of appeal on October 12, 2004 from the original final judgment, and his supplemental notice of appeal on December 2, 2004 from the amended final judgment. Assuming that the complained-of order appointing Darryl as successor dependent administrator is appealable,[33] the record contains no notice of appeal from it. We have no subject-matter jurisdiction, in this appeal, to consider a totally independent, appealable order from which no appeal has been perfected. *See* TEX.R.APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's *judgment or order appealed from.*") (emphasis added); TEX.R.APP. P. 25.1(d)(2) ("The notice of appeal must: ... state the date of the judgment or order appealed from ...."); *see also Velasquez v. Harrison,* 934 S.W.2d 767, 770 (Tex.App.-Houston [1st Dist.] 1996, no writ) (holding that appellate court lacks jurisdiction to consider appeal that is untimely perfected).

**33.** *See Crowson v. Wakeham,* 897 S.W.2d 779, 783 (Tex.1995) (holding that, when no statute expressly declares particular phase of probate proceeding to be final and appealable, probate order is interlocutory "if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or [involve] parties not disposed of"); *In re Estate of Robinson,* 140 S.W.3d 801, 805 (Tex.App.-Corpus Christi 2004, pet. dism'd) (holding that order, entered after judgment on will contest, denying application for appointment as co-executor was final and appealable under *Crowson* ).

Consequently, we do not consider issue eight.

## Conclusion

We reverse that portion of the judgment of the trial court that awarded attorney's fees to Traylor. We affirm the judgment in all other respects. We remand the cause for the consideration of the amount of reasonable and necessary attorney's fees that Traylor incurred in pursuing the probate of the March 13, 1999 will.[34] *See* Tex.R.App. P. 44.1(b). This is a limited remand. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Hansen v. Acad. Corp.,* 961 S.W.2d 329, 331 (Tex. App.-Houston [1st Dist.] 1997, pet. denied).

George's motion to supplement his brief with an additional issue is **denied.**[35] His accompanying motion to take judicial notice is **denied** as moot.

## SUPPLEMENTAL OPINION ON REHEARING

TIM TAFT, Justice.

On April 27, 2006, the Court issued its opinion and judgment, which affirmed the lower-court judgment in part, reversed it in part with respect to the award of attorney's fees, and remanded the cause for a determination of certain matters relating to attorney's fees. Appellant, George C. Brown ("George"), has moved for rehearing and for en banc reconsideration. The panel **denies** the motion for rehearing. Furthermore, a majority of the justices of this Court **deny** the motion for en banc reconsideration. The panel's April 27, 2006 opinion and judgment remain unchanged by this supplemental opinion, which we issue to address very briefly the opinion dissenting from the denial of en banc reconsideration.

With the exception of the dissenting justice's arguments relating to the publication of a will, virtually all of the dissenting justice's arguments fall into one of the following categories: (1) unassigned, non-fundamental error—raised neither in appellant's opening brief, in his untimely reply brief,[1] or in his motions for rehearing or for en banc reconsideration—which we are prohibited from considering;[2] (2) non-fundamental-error challenges that were

---

34. The consideration of attorney's fees on remand does not include a determination of whether Traylor acted in good faith and with just cause in defending the March 13, 1999 will for the purpose of having the will admitted to probate because (1) George did not challenge this jury finding (question seven) on appeal and (2) the matter is severable from the issue of the amount of reasonable and necessary attorney's fees that Traylor incurred in pursuing the probate of that will.

35. Justice Bland would grant the motion to supplement Brown's brief and would overrule the issue asserted therein on the merits.

1. As noted in the panel's original opinion, Justices Taft and Higley voted to deny George's motion to supplement his brief with an additional issue asserted for the first time in his reply brief, while Justice Bland would

have granted that motion, but would have overruled on the merits that issue asserted in the reply brief. Nothing in the dissenting opinion changes the panel justices' prior decision concerning George's motion to supplement his brief with an additional issue or any justice's view of the merits of that belated issue.

2. *See, e.g., Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."); *see also Britton v. Tex. Dep't of Crim. Justice,* 95 S.W.3d 676, 681 n. 6 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (noting that exception to *Walling v. Metcalfe* rule exists when trial court commits fundamental error); *Pirtle v. Gregory,* 629 S.W.2d 919, 919–20 (Tex.1982) (noting that fundamental error is rare); *See In re J.F.C.,*

not preserved below;[3] or (3) credibility determinations, which we cannot make in a factual-sufficiency review.[4] As for the dissenting justice's arguments concerning publication, we have already explained why the self-proving-affidavit provision of the Probate Code, upon which the dissenting justice relies, does not apply to a will (like this one) that does not contain such an affidavit. *See Brown v. Traylor,* No. 01–04–01091–CV, 210 S.W.3d 648, 666 n. 24, 2006 WL 1098265, at *11 n. 24 (Tex.App.-Houston [1st Dist.] Apr. 27, 2006, no pet. h.) ("The purpose of the self-proving affidavit is to relieve the will's proponent of the burden of presenting witnesses to prove the will. Its purpose is not, however, 'to add anything to the list of formalities required for the execution of a will.' Therefore, the requirement that a self-proving affidavit contain the witnesses' averment that the testator published the will to them does not alter the other provisions of section 59(a), which do not require publication of the will itself.") (citations omitted).

Justice KEYES, dissenting from denial of en banc reconsideration.

EVELYN V. KEYES, Justice, dissenting from denial of en banc reconsideration.

This is a classic example of the adage that bad cases make bad law. Appellant, George C. Brown ("George") appeals from a judgment, rendered upon a jury verdict, admitting to probate what the jury concluded was a true and correct copy of a valid will executed by his father, Henry Brown ("Henry") on March 13, 1999 (the 1999 Will Copy). Because I believe the case was tried under an incorrect charge and the result is an appellate opinion that misconstrues and gravely weakens the statutory protections against the probate of fraudulent wills, I respectfully dissent from denial of en banc review.[1]

The panel holds that the law as stated in the charge was correct and that appellant waived his right to legal review of the evidence in support of the judgment. Thus, finding that the evidence presented to the jury was factually sufficient to support the jury's findings, it affirms the judgment holding the 1999 Will valid and ordering it probated. I would hold that (1) the trial court erred in rejecting a jury question and instruction that correctly stated the law regarding attestation of a will and in submitting a legally improper instruction to the jury and (2) that the improper jury question and instructions resulted in an erroneous judgment holding that the 1999 Will was executed with all the formalities and solemnities and under the circumstances to make it a valid will. I would reverse and remand the case for further proceedings in accordance with this opinion.

## THE FACTS

Henry Brown was an elderly and ill man in 1999 and had not signed his own docu-

96 S.W.3d 256, 292, 308 (Tex.2002) (Hankinson, J., dissenting, joined by Enoch, J., and Schneider, J., dissenting) (noting that public-policy type of fundamental error is exceptionally rare).

3. *See* Tex.R.App. P. 33.1(a)(1).

4. *See Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003) (indicating that jury is sole judge of witnesses' credibility;

that jury may choose to believe one witness over another; and that reviewing court may not impose its own opinion to contrary).

1. Texas Rule of Appellate Procedure 41.2 provides that "[e]n banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." Tex.R.App. P. 41.2(c).

ments for years when the jury found he had the 1999 Will drafted and executed in accordance with the law.

The undisputed evidence establishes that Pamela Yancy—a notary public and not a lawyer—drafted all pages of the 1999 Will, notarized all the signatures, and made the 1999 Will Copy offered for probate. Yancy also signed the 1999 Will she had drafted as a subscribing witness, signing on a separate page on which two signatures by Henry appear, and was the only subscribing witness who also signed the testamentary pages, which Henry did not sign. Yancy is the daughter of appellee Lucy Traylor, a non-relative of Henry and a substantial legatee under the 1999 Will, who offered the 1999 Will Copy for probate.

The other subscribing witnesses—Melva Collins, Wanda Walker, and Darryl Walker—signed another separate page styled an "attestation clause" at Yancy's request. That page was unattached to the other pages of the 1999 Will Copy offered for probate, was in a different font from the testamentary pages, and contained interlineations and strike-outs regarding which no one but Yancy testified. The "attestation clause" stated:

> On the date above written, Henry J. [stricken] Brown, well known to us declared to us, and in our presence, that this instrument,
>
> consisting of [interlineated '5pg'] pages, is his last will and testament, and Henry ['J.' stricken] Brown, then signed this instrument in our presence, and at Henry ['J.' stricken] Brown's request we now sign this will as witnesses in each other's presence. Further that Henry ['J.' stricken] Brown, appeared to us to be of sound mind and lawful age, and under no undue influence.[2]

The "attestation clause" was not a self-proving affidavit, as the evidence established and the panel found; and thus the validity of the 1999 Will had to be proved by testimony at trial. *See* Tex. Prob.Code Ann. § 59(a) (Vernon 2003).

Yancy, the drafter of the 1999 Will, was the only witness who testified to having any knowledge of the contents of the 1999 Will. She was also the only witness who testified to the circumstances under which the 1999 Will was prepared, and she alone explained the different fonts, unattached and unnumbered pages, strike-outs, and interlineations in the 1999 Will Copy submitted for probate. She was also the only witness who testified to seeing Henry Brown execute the 1999 Will and the only subscribing witness who testified that he knew its contents. Other than Yancy's testimony, there is no evidence that the unnumbered testamentary pages, the separate page with Henry's two signatures and Yancy's signature, and the separate "attestation clause" with the signatures of Melva Collins and Wanda and Darryl Walker—were ever attached to each other or formed part of the same instrument. There is no evidence from anyone but Yancy that the original of the 1999 Will Copy offered for probate was in the room or even in existence when Collins and Wanda and Darryl Walker signed the separate attestation clause.

On direct examination, Yancy testified that Henry signed the 1999 Will; that Darryl and Wanda Walker and Melva Collins were all present when he signed; and that all witnesses signed their names in his presence and in her notary log. She also testified that Henry did not discuss anything about the 1999 Will with her on March 13, 1999, the date the other subscribing witnesses signed the attestation

---

**2.** The evidence at trial established that Henry    had no middle initial 'J.'

clause, "because again the document was done." The only conversation was "[j]ust some basic small talk. . . . But nothing specifically directed towards the will; just small talk." Her only conversation with Darryl was to ask him for his I.D. Yancy testified that Darryl and his mother were at the house for 20 minutes, which "was an estimation based on how much time it takes to write things down." She testified that Melva Collins "might" not have read what she was signing, stating, "You'd have to ask her." On cross-examination, when counsel for appellant attempted to ask Yancy whether she recalled Darryl or Wanda Walker reading the 1999 Will, appellees' attorney objected on the ground—reiterated several times during the trial—that "[w]itnesses do not have to read a will." The court sustained the objection.

Two other subscribing witnesses, Melva Collins and Darryl Walker, also testified at trial. Wanda Walker, Henry's sister and the other subscribing witness, had passed away before Henry.

Collins testified by deposition read in open court that she knew she was signing a will only because Yancy picked her up, told her they were going to lunch and a movie, and asked her "would I go with her and to get something notarized—to get a will notarized or something. I can't remember the wording. You know, I just don't remember." She signed something "at Mr. Brown's house." There was a lot of paperwork on the table, but "I don't know. I don't know the full details of what—what was here." She was "just like sitting on the sideline. I don't know what was really going on." She did not remember who was there except Yancy and "the guy," and she did not remember "what words were said about nothing."

Collins testified that the "guy" sitting at the table "was an older man, I think." Something was wrong with him, and "[h]e just looked sickly to me." This was the first time she had seen Henry Brown, and she did not recall whether he said anything to her. He was talking with Yancy, but Collins had "no idea what was said with him or her." Yancy—not Henry—asked her to be a witness to "something" and, "I didn't read it. I just signed it. I said okay, fine." Collins insisted, "I don't think she—I signed any—any legal documentation. I didn't. It was—it was like a memorandum of her personal whatever. It was not anything legal that I signed." Finally, Collins testified that she did not see Henry with a pen in his hand, and she did not know who either Wanda Walker or Darryl Walker was on the date she signed the attestation clause.

Darryl Walker, the remaining witness to the 1999 Will, was Henry's nephew and Wanda's son. He was not a named legatee in the 1999 Will, but he inherited his deceased mother's portion at Henry's death. Darryl testified that his mother woke him up to go over to his uncle's house, saying Henry wanted to talk to him, but she did not say why. Henry said to him, " 'Hey, there Yogi. Hey, you know, what's going on? I just need you to come with mom and sign.' Didn't know what it was." His mother signed, and then he did. Yancy was there, and Darryl handed her his ID before he signed her notary log. Darryl did not hear Henry "say anything about who he left what." He signed and left. He did not know who Melva Collins was. He saw only Henry, Traylor, his mother, and maybe James Anderson at the house. Contrary to Yancy, Darryl testified that he was in Henry's house only between two and five minutes. He signed because his mother asked him to, and he then left and went to the car. Darryl testified, "What should I sit up and talk with them, drink with them, party with them? It's grown

folks. It's grown folk's business. That's what it was."

On re-cross-examination, after the other witnesses had testified, Yancy agreed that, of the witnesses who attested to what occurred on March 13, 1999, she was the only one who saw Henry Brown sign the will and that Darryl and Melva "didn't see Henry Brown signing anything."

## THE CHARGE

In his first issue, appellant argues that the trial court erred in "failing to submit a proper jury question on the attestation requirement."

In pertinent part, the jury charge and verdict read:

### QUESTION NO. 3

Do you find from a preponderance of the evidence that the individual or individuals named below subscribed his or her name in his or her own handwriting to the purported will dated March 13, 1999 while in the presence of Henry Brown at a time when he or she was above the age of 14 years?

### INSTRUCTION

*One requirement of a valid typewritten will is that the witnesses sign in the actual presence or conscious presence of the testator. Conscious presence means that Henry Brown was able to see the witnesses to the will from his actual position at the time, or at most, from such position as slightly altered, where he has the power readily to make the alteration without assistance. There is no requirement that the witness know that he or she is signing a will.*

---

**3.** The jury was also asked to find whether the 1999 Will Copy offered for probate was a true

| | | Answer: Yes or No |
|---|---|---|
| Melva L. Collins | Answer: | Yes |
| Wanda Walker | Answer: | Yes |
| Darryl K. Walker | Answer: | Yes |
| Pamela A. Yancy | Answer: | Yes |

(Emphasis added.)

The foregoing question and instructions were the *only* question and instructions submitted to the jury with respect to whether the 1999 Will was executed with all the solemnities and formalities and under the circumstances required by law to make it valid, other than the question whether Henry executed the 1999 Will, which the jury answered affirmatively.[3]

Appellant had proposed the following jury question, which the trial court rejected in writing:

QUESTION 1:

Do you find that Henry Brown executed the purported will dated March 13, 1999 *with all the formalities to make it a lawful and valid will?*

You are instructed that all of the formalities required by law to make a valid will are as follows:

1. The will must be in writing;
2. The testator must be 18 years or older;
3. The testator must personally sign the will;
4. *The will must be attested by two or more credible and disinterested witnesses* above the age of 14 years who each subscribe their names to the will in their own handwriting.

*"Attested" means that the testator acknowledged to the witnesses that it was*

and correct copy of the 1999 Will.

his will and the witness [sic] signed it at the request of the testator, and in the presence of the testator.

"Disinterested" means that a person that [sic] does not stand to benefit from probate of the instrument as a will.

Answer "Yes" or "No"

Answer:

(Emphasis added.)

Appellant argues that his proffered Jury Question No. 1 and its instructions, which the trial judge rejected, were legally correct; Jury Question No. 3 and its instructions, which were submitted to the jury, were legally incorrect; and the trial court's rejection of his jury question and instructions caused the rendition of an improper judgment. I agree.

## Standard of Review

Rule 277 of the Texas Rules of Civil Procedure requires that a trial court submit to the jury "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277; *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex.1997). An appellate court reviews a trial court's decision to submit or refuse an instruction under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). When the trial court refuses to submit a requested instruction on an issue raised by the pleadings and the evidence, the issue on appeal is whether the request was reasonably necessary to enable the jury to reach a proper verdict. *Id.; Texas Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex.2000). To be proper, an instruction "must (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence." *Mandlbauer*, 34 S.W.3d at 912. The trial court has wide discretion to determine the sufficiency of definitions and instructions. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex.1995); *Allen v. Allen*, 966 S.W.2d 658, 659 (Tex. App.-San Antonio 1998, pet. denied). The test of the sufficiency of a definition is its reasonable clarity in enabling jurors to understand legal words or phrases so that they may properly answer the questions and render a verdict in the case. *Allen*, 966 S.W.2d at 660; *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.-Houston [14th Dist.] 1989, writ denied). An instruction is improper only if it misstates the law as applied to the facts. *Harris*, 765 S.W.2d at 801.

If the reviewing court determines that the trial court gave an improper definition, it must then proceed to inquire whether the error was harmless. *Allen*, 966 S.W.2d at 660; *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex. App.-Houston [14th Dist.] 1992, writ denied); *see also* TEX.R.APP. P. 44.1(a)(1). The omission of an instruction is reversible error only if it probably caused the rendition of an improper judgment. *Shupe*, 192 S.W.3d at 579.

## Law Governing Proof of Validity of a Will

To admit a will to probate, the trial court must find that it is valid under the Probate Code. *Guthrie v. Suiter*, 934 S.W.2d 820, 829 (Tex.App.-Houston [1st Dist.] 1996, no writ). "When one meets the legal requirements, properly executes a will and provides for a disposition of his property not violative of public policy, his testamentary disposition should be respected." *Estate of Morris*, 577 S.W.2d 748, 756 (Tex.Civ.App.-Amarillo 1979, writ ref'd n.r.e.). The paramount issue is whether the proposed instrument was executed under the solemnities provided by the Probate Code. *See Combs v. Howard*, 131 S.W.2d 206, 211 (Tex.Civ.App.-Fort Worth 1939, no writ).

The burden is on the proponent of admitting a will to probate to establish that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will. *Douthit v. McLeroy,* 539 S.W.2d 351, 352 (Tex.1976) (per curiam); *In re Estate of Flores,* 76 S.W.3d 624, 629 (Tex.App.-Corpus Christi 2002, no pet.); *In re Estate of Livingston,* 999 S.W.2d 874, 879 (Tex.App.-El Paso 1999, no pet.). The burden never shifts, and the contestants are not under the burden of proving it invalid. *Douthit,* 539 S.W.2d at 352; *Mahan v. Dovers,* 730 S.W.2d 467, 468 (Tex.App.-Fort Worth 1987, no writ); *In re Rosborough's Estate,* 542 S.W.2d 685, 688 (Tex.App.-Texarkana 1976, writ ref'd n.r.e.).

The sections of the Texas Probate Code governing validity of a will that are applicable here include sections 57, 58b, 59, 61, 62, 84, 85, and 88.

Section 57 of the Probate Code provides that "[e]very person who has attained the age of eighteen years . . . at the time the will is made, being of sound mind, shall have the right and power to make a last will and testament, under the rules and limitations prescribed by law." Tex. Prob. Code Ann. § 57 (Vernon 2003).

Section 59(a) of the Code sets out the general requisites of a will. It provides:

(a) *Every last will and testament,* except where otherwise provided by law, *shall be in writing* and *signed by the testator* in person or by another person for him by his direction and in his presence, *and* shall, if not wholly in the handwriting of the testator, *be attested by two or more credible witnesses* above the age of fourteen years *who shall subscribe their names thereto* in their own handwriting in *the presence of the testator.*

*Id.* § 59(a) (emphasis added).

Subsection 59(a) also provides that a will may be self-proving, *i.e.,* established as valid without the necessity of primary evidence from the witnesses or secondary evidence, if certain specific statutory criteria are met:

Such a will or testament may, at the time of its execution or at any subsequent date during the lifetime of the testator and the witnesses, be made self-proved, and the testimony of the witnesses in the probate thereof may be made unnecessary, by the affidavits of the testator and the attesting witnesses, made before an officer authorized to administer oaths under the laws of this State. Provided that nothing shall require an affidavit or certificate of any testator or testatrix as a prerequisite to self-proof of a will or testament other than the certificate set out below. The affidavits shall be evidenced by a certificate, with official seal affixed, of such officer attached or annexed to such will or testament in form and contents substantially as follows:

. . . .

Before me, the undersigned authority, on this day personally appeared [names], known to me to be the testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me duly sworn, the said [name], *testator, declared to me and to the said witnesses in my presence that said instrument is his last will and testament, and that he had willingly made and executed it as his free act and deed; and the said witnesses, each on his oath stated to me, in the presence and hearing of the said testator, that the said*

*testator had declared to them that said instrument is his last will and testament, and that he executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said testator and at his request;* that he was at that time eighteen years of age or over (or being under such age, was or had been lawfully married, or was then a member of the armed forces of the United States or of an auxiliary thereof or of the Maritime Service) and was of sound mind; and that each of said witnesses was then at least fourteen years of age.

*Id.* (emphasis added). Subsection 59(c) adds, *"A self-proved will may be admitted to probate without the testimony of any subscribing witness, but otherwise it shall be treated no differently than a will not self-proved." Id.* § 59(c) (Vernon 2003) (emphasis added).

If *a written will* produced in court is self-proved as provided in section 59 of the Probate Code, "no further proof of its execution with the formalities and solemnities and under the circumstances required to make it a valid will shall be necessary." *Id.* § 84(a) (Vernon Supp.2005). However, if an attested written will produced in court is contested and is not self-proving, section 84 of the Probate Code provides in relevant part, that the will "may be proved ... *[b]y the sworn testimony or affidavit of one or more of the subscribing witnesses thereto, taken in open court." Id.* § 84(b)(1) (Vernon Supp.2005) (emphasis added).

To probate a non-self-proving will, the will's proponent must prove

(1) [T]hat the testator, at the time of executing the will, was at least eighteen years of age ... and was of sound mind; and

(2) [T]hat the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will; and

(3) That such will was not revoked by the testator.

*Id.* § 88(b) (Vernon 2003).

A *will copy* is proved in the same way as an attested written will, except that, in addition, section 85 of the Probate Code requires that "the cause of its non-production ... be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced, and *the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read." Id.* § 85 (Vernon 2003) (emphasis added).

Regarding the competency of witnesses to attest to the validity of a will, section 61 of the Probate Code provides that a bequest to a subscribing witness is *void* if that witness's testimony is necessary to establish the validity of the will, and that "such witness shall be ... compelled to appear and give his testimony." *Id.* § 61 (Vernon 2003). However, the witness is still entitled to that share of the estate he would have been entitled to if the testator had made no will, so long as that share does not exceed the value of the bequest to him. *Id.* A bequest to a subscribing witness who is also a legatee is *not void,* however, *"if his testimony proving the will is corroborated by one or more disinterested and credible persons who testify that the testimony of the subscribing witness is true and correct, and such subscribing witness shall not be regarded as an incompetent or non-credible witness under Section 59 of this Code." Id.* § 62 (Vernon 2003) (emphasis added).

Finally, section 58b of the Probate Code provides that

(a) A devise or bequest of property in a will is void if the devise or bequest is made to:

(1) an attorney who prepares or supervises the preparation of the will;

(2) a parent, descendant of a parent, or employee of the attorney described by Subdivision (1) of this subsection.

*Id.* § 58b (Vernon 2003).

"A witness to a will serves to prove the will was executed with the formalities and solemnities and under the circumstances required to make the will valid." *Estate of Teal,* 135 S.W.3d 87, 90 (Tex.App.-Corpus Christi 2002, no pet.). "The witness must testify in court, or by affidavit, that the testator declared that the instrument was his last will and testament, that he had willingly and freely made and executed the instrument, that he was over eighteen years old, and that he was of sound mind and body." *Id.* (citing TEX. PROB.CODE ANN. § 59(a) as "setting out necessary contents for an affidavit to prove will without testimony of witness in open court"). "The purpose of a self-proving affidavit is to eliminate the need for the witness to testify in court." *Id.* at 90 n. 5. Therefore, "the contents of the affidavit, as prescribed by section 59, are instructive as to the testimony of a witness necessary to prove a will." *Id.*

The terms "competent witness" and "credible witness" are synonymous. *Triestman v. Kilgore,* 838 S.W.2d 547, 547 (Tex.1992). A competent witness is one who receives no pecuniary benefit under the terms of the will. *Id.* A witness interested as taking under a will is not competent to testify to establish it. *Id.; see* TEX. PROB.CODE ANN. § 61. However, a will is not void merely because a witness is a devisee, provided the will can be proved by other competent witnesses. *See* TEX. PROB. CODE ANN. § 62; *Livingston,* 999 S.W.2d at 877; *In re Estate of Iversen,* 150 S.W.3d

824, 826 (Tex.App.-Fort Worth 2004, no pet.); *Scandurro v. Beto,* 234 S.W.2d 695, 698 (Tex.App.-Waco 1950, no writ) (when will was signed by testatrix and attested by two subscribing witnesses, one of whom was devisee under will, will was not void; but to sustain it and prevent it from failing entirely for lack of required number of competent attesting witnesses, subscribing devisee had to become competent witness by receiving no pecuniary benefits under will).

### Misstatements of Law in the Instruction to Jury Question No. 3

*Number and Competency of Attesting Witness*

The instruction to Jury Question No. 3, unlike the instruction to rejected Jury Question No. 1, failed to inform the jurors that the 1999 Will had to have been proved by "two or more credible witnesses" in order to satisfy the attestation requirements of section 59(a) of the Probate Code. *See* TEX. PROB.CODE ANN. § 59(a); *Wich v. Fleming,* 652 S.W.2d 353, 355 (Tex.1983) (holding that two competent witnesses are required to sustain validity of will); *Iversen,* 150 S.W.3d at 826 (same); *Scandurro,* 234 S.W.2d at 698 (same). Nor were the jurors instructed that a "credible" witness is the same as a competent witness and that a "disinterested" witness is a person who does not stand to benefit from probate of the instrument as a will. *See Triestman,* 838 S.W.2d at 547. In particular, they were not informed that "a person interested as taking under a will is incompetent to testify to establish it." *Id.; see also Scandurro,* 234 S.W.2d at 698 (devisee who was subscribing witness was not competent witness unless she relinquished or court revoked her pecuniary interest under will). Thus, the jurors were left improperly free to credit the testimony of

witnesses who stood to benefit under the 1999 Will, in addition to being free to accept as sufficient proof the testimony of *one* witness, rather than the testimony of *two* "disinterested and credible" witnesses. *See* Tex. Prob.Code Ann. §§ 58b, 59, 61, and 62.

### "Conscious Presence" of the Testator

The instruction to Jury Question No. 3, also unlike the instruction to rejected Jury Question No. 1, failed to inform the jurors as to the meaning of "attested." However, it did accurately inform them that "[o]ne requirement of a valid typewritten will is that the witnesses sign in the actual presence or conscious presence of the testator." *See id.* § 59. It then undermined this correct statement of the law by defining "conscious presence" as meaning that "Henry Brown was able to see the witnesses to the will from his actual position at the time, or at most, from such position as slightly altered, where he has the power readily to make the alteration without assistance," thus leaving the jurors with the impression that Henry Brown's physical presence in the room when the witnesses signed the attestation clause was all that was required to satisfy attestation requirements. This definition added nothing to the jurors' ordinary understanding of the terms "conscious" and "presence," and it was misleading in that it misdirected the jurors to focus on whether Henry was in the room when the attesting witnesses signed the 1999 Will while failing entirely to mention the number and competency of witnesses required to establish the validity of a will.

Even more importantly, the definition of "conscious presence" given the jurors contradicted the law that applies when, as here, a will offered for probate was executed under suspicious circumstances. To establish the validity of a contested will offered for probate under suspicious circum-stances, the person offering the will must prove by "clear proof" that the testator understood the contents of the proffered document. This rule was established over a century ago by the Texas Supreme Court in *Kelly v. Settegast*, which stated:

> *This case comes before us surrounded with facts which call for clear proof that Kelly knew the contents of the paper offered for probate.* The deceased was in poor health. He was surrounded by those who take benefit under it. It is not shown that he gave any instructions in regard to a will. It was written by one who was deeply interested in having such a will made. The making of it was kept secret from his only living child, though she seems to have been in the same house. One taking under it, in part, at least, suggested who should be present at its execution; and it is unnatural, in that it denies to those most nearly related to the deceased any part of his estate, and was executed by one not in possession of means within himself to ascertain its contents.
>
> . . . . [T]he law does not presume fraud; but when circumstances throw suspicion on a paper offered for probate it does require clear proof.

68 Tex. 13, 2 S.W. 870, 873 (Tex.1887) (emphasis added); *see also Boyd v. Frost Nat'l Bank*, 145 Tex. 206, 196 S.W.2d 497, 507 (Tex.1946); *Wilson v. Paulus*, 30 S.W.2d 573, 577 (Tex.Civ.App.-Galveston 1930, writ ref'd) (when will written by beneficiary ignores testator's relatives and testator could not ascertain contents by inspection, it should be shown testator understood contents; mere proof of execution does not entitle paper to probate).

The instant case clearly falls under the rule in *Kelly*, because the circumstances under which the 1999 Will was purportedly executed are virtually indistinguishable from that case. Yet the instruction to

Jury Question No. 3 misinformed the jurors that they needed only to determine that Henry was physically in the same room as the attesting witnesses when they signed his will, not that the persons offering the 1999 Will had to prove that Henry understood the contents of the 1999 Will.

### Attesting Witnesses' Knowledge

The instruction to Jury Question No. 3 further stated, in contrast to the instruction to rejected Jury Question No. 1, "There is no requirement that the witness know that he or she is signing a will." This is a critical misstatement of the law.

First, when, as here, a will *copy* is offered for probate, the Probate Code expressly requires that *"the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read,"* TEX. PROB.CODE ANN. § 85 (emphasis added); *Garton v. Rockett,* 190 S.W.3d 139, 145 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (quoting TEX. PROB.CODE ANN. § 85);[4] *see also In re Estate of Jones,* 197 S.W.3d 894, 898 (Tex. App.-Beaumont 2006, pet. filed); *In re Estate of Capps,* 154 S.W.3d 242, 244 (Tex. App.-Texarkana 2005, no pet.); *Coulson v. Sheppard,* 700 S.W.2d 336, 337 (Tex.App.-Corpus Christi 1985, no writ); *Howard Hughes Med. Inst. v. Neff,* 640 S.W.2d 942, 951–52 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). Since an attested will must be proved by two credible witnesses, if only a copy is offered for probate at least one of those witnesses not only has to know that he or she signed a last will and testament but he must have read the will or had it read to him so that he can attest that the copy is actually a copy of the document he signed.

In addition, in order to prove the validity of any will under section 59(a) of the Probate Code there must be testimony by two credible subscribing witnesses, either by self-proving affidavit or in open court, that the testator acknowledged to the witnesses that it was his will and that the witnesses signed it at the request of the testator and in the presence of the testator. *See* TEX. PROB.CODE ANN. § 59(a) (setting out requirements for self-proving affidavits); § 59(c) (stating, "A self-proved will may be admitted to probate without the testimony of any subscribing witness, but otherwise it shall be treated no differently than a will not self-proved"); *Teal,* 135 S.W.3d at 90; *Rosborough,* 542 S.W.2d at 688; *see also Wich,* 652 S.W.2d at 354 ("Proper attestation by two qualified witnesses validates an otherwise properly executed will; the only purpose of the self-proving affidavit is to eliminate the necessity for the testimony of the subscribing witnesses when the will is offered for probate."); *Boren v. Boren,* 402 S.W.2d 728, 729 (Tex.1966). The Texas Supreme Court has explained the purpose of the self-proving provision of section 59(a) of the Probate Code:

> The only purpose served by such self-proving provisions is to admit a will to probate without the testimony of a subscribing witness. The provision was introduced into the Texas Probate Code in 1955 as an alternative mode of proving a will. It was not the purpose of the Legislature to amend or repeal the requirement that the will itself must meet the requirements of the law. *Section 59 expressly states that a self-proved will, except for the manner of proof, shall be treated no differently than a will which is not self-proved.*

*Boren,* 402 S.W.2d at 729 (citation omitted) (emphasis added). Contradicting the foregoing express requirements of attestation set out in the Probate Code, the Instruction to Jury Question No. 3 affirmatively

---

**4.** *Garton* was decided by this Court one year ago.

misleads the jury by misinforming them that "[t]here is no requirement that the witness know he or she is signing a will."

The panel, however, confuses Texas's lack of a requirement that attesting witnesses must know the *contents* of the will they signed when the *original* will (not a copy) is offered for probate with a purported tenet of Texas law that no witness who testifies to establish the validity of a will copy offered for probate need even know (1) that the piece of paper he signed was attached ever to a will that the testator acknowledged as such or (2) that the will offered for probate as the testator's has anything to do with the will the witness purportedly attested. The panel states, "The Probate Code does not expressly provide that the testator publish to the subscribing witnesses that the document that they are witnessing is his will. *See* TEX. PROB.CODE ANN. §§ 59, 84, 88." Thus, it simply denies the plain language of the statutes and the controlling effect of the authorities cited above. In doing so, it effectively holds that if a will is *not* self-proving, it need not be *proved* at all.

All that is required to prove the validity of a purported will of which a copy is offered for probate—according to the probate law established by this Court—is the testimony of two subscribing witnesses, who need not be legally credible, *i.e.*, who may be self-interested, that they signed a piece of paper they did not read in the presence of the testator without knowing what it was they signed, without knowing whether the testator knew that it was his last will and testament they were signing, without knowing whether the piece of paper they signed was ever attached to a will, and without knowing whether the instrument offered for probate as a copy of the will they purportedly attested actually was a copy of an instrument that they signed or that even existed when they

signed a separate "attestation clause." Nor, in the panel's view, does it matter that the *only* spokesperson for the validity or contents of the photocopied mismatched and interlineated pages offered as a true and correct copy of the will attested by the subscribing witnesses was the subscribing witness who drafted the purported will and whose mother was a non-relative of the testator but a substantial legatee under the will. The other subscribing witnesses may—as they did—affirmatively demonstrate under oath that they did not know what they signed and that they could not identify that page as part of a will at all. They may even insist, as Collins did, that they did *not* sign anything legal.

The panel bases its holding on two mistakes. First, it fails to recognize the distinction between a *factually* credible witness as determined by a jury and a *legally* credible, or legally competent, witness under the Probate Code, whose competency to testify is a matter of law for the court. Thus, like the jury in this case, which was not instructed on legal competency, the panel does not evaluate any of the testimony for legal competency, as the Probate Code requires.

Second, the panel mistakenly holds that Texas law does not require "publication," *i.e.*, "the act of declaring or making known to the witnesses that the testator understands and intends the instrument subscribed by him to be his last will and testament." *Davis v. Davis,* 45 S.W.2d 240, 241 (Tex.Civ.App.-Beaumont 1931, no writ). In deciding that Texas law does not require publication, the panel declares that "[o]nly two opinions have addressed whether publication is required, and only one of them has done so clearly"—namely *Davis* and *Keding v. Kveton,* 254 S.W. 612, 614 (Tex.Civ.App.-Galveston 1923, no writ) (op. on reh'g). Both of these cases are intermediate appellate court *pre-Code*

cases on which no petition for review was filed, the later of which—the only clear authority relied on by the panel—is 75 years old; and the language the panel quotes from that case, *Davis*, makes it clear that the panel based its opinion on *Davis's* statement of pre-Code law, not on the requirements of the Probate Code. *Davis* states:

Publication of a will, or the calling the attention of the witnesses to the will, by the testator, that the instrument which they are requested to attest is his will, is not a prerequisite to its legality *unless required by statute.*

. . . .

In this state, the law, [Probate Code section 59's predecessor], . . . does not require the publication of a will, nor does it require that the testator inform the attesting witnesses that the instrument to be attested is his will. . . . Under our statute, to hold that because the testator did not tell an attesting witness that the instrument he was signing was the testator's will rendered the will illegal would be to read into the statute a prerequisite to the validity of the will that the Legislature did not include. It would be to superadd a condition or requirement not expressed in the law. . . . As we have stated above, under the statute of Texas, publication of the will or knowledge of the attesting witness that the instrument signed by him was a will are not required.

*Davis*, 45 S.W.2d at 241 (citations omitted) (emphasis added).

The problems with the panel's reliance on *Davis* as its admittedly sole clear authority for its interpretation of the Probate Code's requirement for attestation of a will are that (1) section 59(a) of the later-enacted Probate Code *does* require that the testator tell the attesting witnesses that the instrument he is signing is his will

and that he ask the witnesses to sign it as attesting witnesses; (2) when, as here, suspicious circumstances attend the execution of a will offered for probate, Texas law requires "clear proof" that the testator himself understood the contents of the will; (3) section 59(a) expressly requires that a will be proved by two "credible," *i.e.*, disinterested, witnesses; and (4) section 85 of the Probate Code requires that a will *copy* offered for probate be proved by the testimony of at least one "credible," *i.e.*, disinterested, witness who has read the contents of the will or has had it read to him. *See* TEX. PROB.CODE ANN. §§ 59, 85.

Texas law does not require that attesting witnesses know the *contents* of a will when the original, and not a copy, is offered for probate; but the notion that they need not even know that they are signing an instrument that the testator acknowledges as his last will and testament is simply false under section 59 of the Probate Code. And when, as here a will copy is offered for probate, it is equally incorrect to conclude that the copy's validity can be established under section 85 of the Code without testimony as to the contents from at least one legally competent witness who has read the original or had it read to him. Much more pertinent to appellate review of this case than the language in *Davis* upon which the panel relies is *Davis's* recognition that "[a] will must be executed in accordance with the statutory requirements, or otherwise it is entirely void." *Davis*, 45 S.W.2d at 241.

### Conclusion

Texas Rule of Civil Procedure 277 requires that an instruction assist the jury, accurately state the law, and find support in the pleadings and the evidence. *Mandlbauer*, 34 S.W.3d at 912. The test of a definition's sufficiency is its clarity in helping jurors understand legal words and phrases so they can properly answer the

questions and render a verdict. *Allen,* 966 S.W.2d at 660; *Harris,* 765 S.W.2d at 801.

Here, the instruction for Jury Question No. 3 failed to instruct the jury on which evidence to credit, *i.e.,* legally "credible and disinterested" witnesses, or legally competent witnesses; it failed to instruct the jury on the number of such credible and disinterested witnesses required to prove up a contested will; it affirmatively misstated the law by misdefining the "conscious presence" of the testator, rather than informing the jurors that the person presenting a contested will for probate executed under suspicious circumstances must clearly prove by competent evidence that the testator understood the contents of the will; and it affirmatively misstated the law by instructing the jurors incorrectly that none of the subscribing witnesses needed to know that they were signing a will, thus, *a fortiori,* that none of them needed to have read the will or have had it read to them, even though only a copy of a purported will was offered for probate.

By contrast, the instruction to rejected Jury Question No. 1 correctly informed the jurors that they must find that the 1999 Will was "attested" by "two or more credible and disinterested witnesses." It correctly defined "disinterested" as meaning "a person that does not stand to benefit from probate of the instrument as a will," and it correctly defined "attested" as requiring that the testator have "acknowledged to the witnesses that it was his will" and that the witness have "signed it at the request of the testator, and in the presence of the testator."

Since Jury Question No. 3 misstated the law and rejected Jury Question No. 1 correctly set out the requirements for attestation of a will, I would hold that the trial court erred in submitting Jury Question No. 3 and its instruction to the jury instead of Jury Question No. 1 and its in-

struction. I would determine, therefore, whether the error was harmful, *i.e.,* whether it probably caused the rendition of an improper judgment. *See Shupe,* 192 S.W.3d at 579.

### Harmfulness of the Error

In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Bay, Inc. v. Ramos,* 139 S.W.3d 322, 329 (Tex.App.-San Antonio 2004, pet. denied).

A 'no evidence,' or legal insufficiency, point of error is a question of law that challenges the legal sufficiency of the evidence to support a particular fact finding. *County of El Paso v. Dorado,* 180 S.W.3d 854, 862 (Tex.App.-El Paso 2005, pet. denied). Because 'no evidence' points are questions of law, they are reviewed *de novo. State Department of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002).

In conducting a legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex. 2003). However, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.... [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). Thus, a no-evidence challenge will

be sustained when " '(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.' " *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

The evidence upon which the jury relied in determining that the 1999 Will was validly attested was almost entirely legally incompetent testimony, *i.e.,* it was the testimony of a single statutorily incompetent witness, Yancy. When this testimony is disregarded, as it must be, the evidence is factually insufficient to support a finding that the 1999 Will was properly attested, *i.e.,* such a finding is against the great weight and preponderance of the competent evidence; hence the evidence is insufficient to support the trial court's judgment that the 1999 Will was valid.

*Yancy*

Yancy, the drafter of the 1999 Will and the daughter of Traylor, a non-relative beneficiary of the 1999 Will, is not a disinterested and credible witness within the terms of the Probate Code. Section 58b of the Code provides that "[a] devise or bequest of property in a will is void if the devise or bequest is made to ... a parent ... of the attorney" who prepared or supervised the preparation of the will." TEX.

PROB.CODE ANN. § 58b. A person who stands to benefit under a will is not a disinterested or credible witness, but a legally incompetent witness. *Triestman,* 838 S.W.2d at 547. Thus, under section 58b, a person who drafts a will is an interested person who may not use that position of trust to benefit either himself or a close relative, and, if he does, he is not competent to testify to the validity of the will.[5] Here, Yancy's mother, a non-relative of the testator, Henry, was a principal beneficiary of the 1999 Will Yancy drafted. Therefore, Yancy was incompetent to testify to establish the validity of the 1999 Will.

Yancy was also an incompetent witness under sections 61 and 62 of the Probate Code, which provide that a bequest to a subscribing witness is void if the will cannot be established other than by the testimony of that witness, unless "his testimony proving the will is corroborated by one or more disinterested and credible persons who testify that the testimony of the subscribing witness is true and correct." TEX. PROB.CODE ANN. §§ 61, 62. Under section 61 and 62 of the Code, a witness who stands to benefit from a will is incompetent to establish the validity of the will as a matter of law unless his testimony is corroborated by at least one disinterested and credible witness. *See id.; Triestman,* 838 S.W.2d 547. Not only was Yancy an interested witness under section 58b of the Code and, therefore, incompetent to testify to establish the validity of the 1999 Will, her testimony as to the drafting of the 1999 Will, the contents of the 1999 Will, its

---

5. Yancy was not an attorney. Thus, she was engaged in the unauthorized practice of law when she prepared the 1999 Will that benefitted her mother. *See* TEX. GOV'T CODE ANN. § 81.101(a) (Vernon 2005) (defining "practice of law" as including "the rendering of any service requiring the use of legal skill or knowledge, such as *preparing a will,* contract, or other instrument, the legal effect of which

under the facts and conclusions involved must be carefully determined") (emphasis added); *Crain v. Unauthorized Practice of Law Comm.,* 11 S.W.3d 328, 333 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). That Yancy was violating the law when she drafted the 1999 Will is no reason to declare that section 58b does not apply to her.

execution by Henry, and Henry's knowledge of its contents was corroborated by any other credible witness, so that even had she been a legally competent witness, section 61's requirement that her testimony be corroborated by a credible witness would not have been met. Nor, under the circumstances of this case, was section 59's requirement that *two* credible witnesses must attest a will met.

### Collins

Collins, who did not take under the 1999 Will, was a disinterested and credible witness. However, her testimony does not support the conclusion that the 1999 Will was valid. Rather, it shows that, the 1999 Will was *not* executed with the solemnities and formalities and under the circumstances required by law. *See* TEX. PROB. CODE ANN. §§ 57, 59, 88. Collins did not know, or even speak to, Henry Brown, and, therefore, she could not testify to whether Henry intended the 1999 Will to be his last will and testament or whether he knew its contents; she did not know that she herself had signed a legal document, much less a last will and testament; she did not know whether or not the piece of paper she signed was attached to the original of the 1999 Will Copy offered for probate, only that she had signed a page presented to her by Yancy; and she did not see Henry execute anything or even know whether he was capable of signing anything, or had prepared a will. Therefore, her testimony does not corroborate the validity of the 1999 Will.

### Darryl Walker

Darryl Walker, unlike Collins, is arguably an incompetent witness since he inherited his mother's legacy under the 1999 Will, which he did not disclaim. Nevertheless, assuming that Darryl's testimony was competent, his testimony, like Collins', affirmatively established that the statutory formalities and solemnities requisite to the validity of an attested will were *not* followed.

Darryl, like Collins, gave no testimony that the piece of paper he signed was part of the purported 1999 Will of which a copy was offered for probate, that Henry signed the 1999 Will, or that the testamentary pages of the 1999 Will were even in the same room or existed when he signed the attestation clause. He did not know the contents of the 1999 Will, and he did not know that Henry knew the contents. Thus, like Collins, Darryl was not able to corroborate the validity of the 1999 Will, as required of an attesting witness.

Counting all the foregoing testimony as disinterested and credible—or even counting the testimony of Yancy alone as disinterested and credible—appellees fell far short of carrying their burden of clearly proving the validity of the 1999 Will Copy offered for probate under the plain language of section 59 of the Probate Code. Therefore, the trial court's judgment on the verdict, holding that the 1999 Will was valid and admitting the 1999 Will Copy to probate, was clearly erroneous.

### CONCLUSION

I would sustain appellant's first issue. I would hold that the trial court erred in rejecting a proper jury question and instructions regarding the proof required by law to establish the validity of a will and in submitting a legally incorrect jury question and instructions, thereby causing the rendition of an improper judgment. Accordingly, I would reverse the judgment of the trial court and remand the cause for further proceedings in accordance with this opinion.